[No. 3839.  Decided October 2, 1901.]

PACIFIC SHEET METAL WORKS, *Respondent,* v. VICTOR A. ROEDER, *as Treasurer of Whatcom County, et al., Appellants.*

MUNICIPAL CORPORATIONS — CORPORATE BOUNDARIES — DESCRIPTION —MEANDER LINE.

Where the boundary of a city as incorporated begins on the meander line of a donation claim and is run by metes and bounds until it intersects the shore of the bay on which the city is located, and thence follows the bay shore in a northerly direction to the point of beginning, the city boundary on the shore side must be construed as following the donation meander line when that is the only line that will close at the initial point.

SAME — TAXATION — ESTOPPEL.

The fact that a city extended its streets outside of its corporate limits, and leased such extended streets for use and occupation as a manufacturing site, would not estop the lessee from disputing its authority to levy taxes on property situated outside of its corporate limits.

Appeal from Superior Court, Whatcom County.    HON.
HIRAM E. HADLEY, Judge.    Affirmed.

*A. E. Mead, Kerr & McCord* and *Jesse A. Frye,* for appellants.

*Dorr & Hadley,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This action was instituted by the respondent in the superior court of Whatcom county, to enjoin the appellants from enforcing the collection of taxes upon certain personal property situate in said county and belonging to the respondent, which taxes were levied for municipal purposes for the use of the city of Fairhaven under the revenue laws of the state of Washington.    The property, at the time of the assessment, was located upon certain tide lands upon the shores of Bellingham bay, and, as appellants claim, within the city of Fairhaven.    The city of Fairhaven was organized as a municipal corporation under the general laws of the state of Washington in May, 1890, and the final order of the board of county commissioners establishing the boundaries of said city was entered on the 12th day of May, 1890.    There is no question as to the regularity of the proceedings under which the assessment was made and the taxes levied, provided said property assessed was included within the boundaries of said city.    Neither is there any controversy as to the correctness of the amount of the taxes, nor of the

incorporation of said city. The gravamen of the complaint filed in the case was that the property taxed was not subject to taxation for municipal purposes for the reason that the same was without the corporate limits of the city of Fairhaven. To this complaint the appellants answered, denying that said property was without the corporate limits of Fairhaven, and alleged that the same was within the corporate limits of said city. In addition thereto, and by way of affirmative defense, the appellants alleged that the respondent was estopped from contending that said property was without the corporate limits of said city for the reason that the greater portion of said property, including the wharves and buildings, was situate within and upon certain streets within the city of Fairhaven, and that the respondent, prior to the construction of its wharves and buildings, applied to the city council of said city for permission to use said streets, and entered into a lease with said city by which the respondent acquired the right and privilege to use said streets for manufacturing purposes, and occupied said streets and said property only under and by virtue of the permission and authority granted to it by the city; and for the further reason that the city of Fairhaven had at all times exercised municipal powers and jurisdiction over said property for the purpose, among other things, of levying taxes, and had levied taxes upon all the property lying below the line of high water mark in said city from the date of the organization of the city until the power of levying and collecting taxes was withdrawn from the city council and placed with the board of county commissioners under the laws of 1893; that the city had further exercised its police powers over the territory lying below the line of high water mark from the organization of said city until the present time. The respondent filed a reply, denying the

affirmative allegations in the answer. Upon the issues thus made, the case was tried by the court. Findings were made in favor of the respondent, and a decree entered perpetually enjoining the appellants from enforcing the collection of the taxes levied for municipal purposes for the city of Fairhaven.

The controversy turns upon the question whether said property was embraced within the corporate limits of the city of Fairhaven or was without said corporate limits, at the date of the assessment. The boundaries of said city, as petitioned for prior to the incorporation, were as follows:

"Commencing at the northwest corner of the W. R. Pattle donation claim in Whatcom county in the state of Washington, which is marked by the letter 'P' cut into solid rock on the shores of Bellingham bay and is in section 36, township 38 north, range 2 east, and is 2,007 feet west and 361 feet south of the quarter section corner on Puget Sound guide meridian between sections 31 and 36; running thence east 4,101.09 feet to the southwest corner of the Thomas Jones donation land claim; thence north along the west line of the Thomas Jones donation land claim to the northwest corner thereof; thence east to the southeast corner of the E. C. Fitzhugh land claim; thence north to the southwest corner of the William Utter donation claim; thence to the southeast corner of the said Utter claim; thence north along the east boundary of the said Utter claim to the section line between sections 29 and 32; thence east along said section line to the quarter corner between sections 29 and 32; thence south along the local division line between the east and west halves of section 32, township 38 north, range 3 east, and sections 5 and 8 to the center of section 17 in township 37 north, range 3 east; thence from the center of section 17 west along the division line between the north and south halves of sections 17, 18 and 13 *to the shores of Chuckanut bay; thence following the shores of Chuckanut bay along the*

*beach in a general northerly course to the place of beginning."*

The boundaries of said city as established by the board of county commissioners are as follows:

"Commencing on the beach of Bellingham bay on the west side of the Pattle donation claim at a point midway between the one-half section line in section 36 and the township line between townships 38 and 37, which point is about 80 rods more or less north of said township line; thence running due east on the quarter section line until said line intersects the half section line in section 32, township 38 north, range 3 E; thence running south on said one-half section line two and three-quarter miles until it intersects the center of section 17 in township 37, range 3 east; thence west on the center line of sections 17 and 18 in township 37, range 3 east, and section 13 in township 37, range 2 east, *until it intersects the shores of Chuckanut and Bellingham bays; thence following the shores of Chuckanut and Bellingham bays in a northerly direction to the point of beginning."*

The statute under which the city of Fairhaven was incorporated provides (§701, Bal. Code):

"A petition shall first be presented to the board of county commissioners of such county, . . . which petition shall set forth and particularly describe the proposed boundaries of such corporation. . . . When such petition is presented, the board of county commissioners shall hear the same, . . . and, on the final hearing, shall make such changes in the proposed boundaries as they may find to be proper, and shall establish and define such boundaries; . . . provided, that any changes made by said board of county commissioners shall not include any territory outside the boundaries described in such petition."

There is no question about the location of any of the boundaries of said city except the west line thereof. This line was described in the petition for incorporation as

"following the shores of Chuckanut bay along the beach in a general northerly course to the place of beginning." It was finally established and defined by the board of county commissioners as follows: "Following the shores of Chuckanut and Bellingham bays in a northerly direction to the place of beginning." There is no difference in these lines described. They are the same line. Appellants contend that the expression "from the intersection of the shores of Chuckanut bay in a northerly direction to the place of beginning" does not contemplate the shores as they existed at the time of the incorporation of the city, but as they might exist either by change in the natural shores by accretions or in the artificial structures erected for the purposes of commerce. This contention of appellants would be correct if the west line of the city of Fairhaven, as established and defined, extended to the line of low tide or beyond, but would not be correct if the west line of the city did not extend to low tide. The general rule is that where boundaries abut on the sea, and follow along the shore, high water mark is the line thereof. Gould, Waters (2d ed.), §202; Tyler, Law of Boundaries, pp. 31-40; 3 Washburn, Real Property (5th ed.), p. 445; *Jones v. Martin,* 35 Fed. 348; 4 Am. & Eng. Enc. Law (2d ed.), p. 820, and cases cited. And this rule will prevail unless there is something in the description or order or deed or grant showing a different intention on the part of all parties concerned. *Bechtel v. Village of Edgewater,* 45 Hun, 240; *Matter of City of Brooklyn,* 73 N. Y. 179.

It appears from the record in this case that a portion at least of the city of Fairhaven was laid out and platted upon lands known as the W. R. Pattle donation land claim; that this land was patented to the said Pattle

before the state was admitted into the Union, and that the west line of said claim was along what is known as the patent or donation meander line on the coast; that this line is not identical with either the line of low tide or the line of high tide, but that said donation meander line crosses the said tide lines at various points in their various courses. So that in this case there are three shore lines along the said bay at about the location of the property in dispute, viz., the high tide line, the Pattle donation meander line, and the low tide line. It is conceded that the property in question sought to be taxed is west of the high tide line and also west of the Pattle donation meander line and outside the city limits, provided either of said lines is the western boundary thereof. The initial point in the boundary of said city is described in the petition as being "at the northwest corner of the W. R. Pattle donation claim in Whatcom county, state of Washington, which is marked by the letter 'P' cut into the solid rock on the shores of Bellingham bay, and is in section 36, township 38 north, range 2 east, and is 2,007 feet west, 361 feet south of the quarter section corner on Puget Sound guide meridian between sections 31 and 36." The initial point in the boundary of said city, as fixed by the final order of the county commissioners, is as follows: "On the beach of Bellingham bay on the west side of the Pattle donation claim at a point midway between the one-half section line in section 36 and the township line between townships 38 and 37, which point is about eighty rods more or less north of the township line." This point is on the same line as the one described in the petition, but some distance south of that point, because the northern boundary of the city of Fairhaven was established within and south of the line

petitioned for in said petition.   It is at neither high nor
low water mark, but, as stated in the evidence and found
as a fact by the trial court," is located on the patent line
of the W. P. Pattle donation claim and near the line of
low water mark at said point, perhaps below the line of
said low water mark."   It also appears from the record
that the west line along either the high tide or low tide
shore will not close at the initial point.   The boundary
lines must be made to close in some way.   These bound-
aries do close on the said donation meander line.   From
these facts the trial court found, we think correctly, that
the donation meander line of the W. R. Pattle donation
claim was the western boundary line of said city, and that
neither the high tide nor the low tide shore was intended.
The language "along the shores of Chuckanut and Bel-
lingham bays" was evidently intended to mean "along
the shore of the donation meander line," which was the
west line of the Pattle donation claim, and not the shores
defined by either high or low tide.   It is argued that if the
finding of the lower court is correct in holding that the
western boundary line of the city of Fairhaven is the said
patent line, then along the entire water front of said city
for a distance of more than two miles a narrow strip of
land, irregular and uncertain in shape and dimensions
will cut off the city of Fairhaven and its inhabitants from
such property and prevent the exercise by the city of its
municipal functions over said strip of land for taxing
and other purposes.   There is much force in this state-
ment, but under the statute, *supra,* it was within the
power of the petitioners for the incorporation, and of the
board of county commissioners who established the said in-
corporation, to "establish and define" the boundaries of
said city at such places as they deemed proper. They might

have established the western boundary at any distance from
the shore, or at the high tide shore line, so as to have in-
cluded future structures along the shore, or they might have
included a portion of the bay.   There may have been some
good reason in their minds for leaving this narrow strip.
The question here is not what they might have done, but
where did they actually establish and define the western
boundaries. The fact that the initial point is on the dona-
tion meander line, and that the boundaries close only on this
line, must be controlling as to its location as against facts
which show that such location was not the best for the city.
It is quite probable that both the petitioners for the incor-
poration and the board which established the boundary
supposed at the time of incorporation that the said dona-
tion meander line extended as far out to sea all along the
coast as low tide, and possibly further.   But this being
true would not change the actual location of said line,
or extend the boundaries of the city further west than
the line which was intended as the western boundary,
which, from all the evidence in this case, appears clearly
to be the said donation meander line.   It is unfortunate
for the city that its western boundary was not made at low
tide or beyond, so that there could have been no strips of
land between the incorporation and the sea, but this is no
reason why this boundary may now be shifted at will,
any more than any other boundary may be shifted for the
purpose of including property without the limits.   Provis-
ion is made by statute for such extension, and these pro-
visions must be followed.

Holding as we do that the property is outside the cor-
porate limits of the city, and therefore not liable for
taxes, disposes of the other questions presented, because,
if the city had no authority to collect taxes illegally as-

sessed, it may be enjoined therefrom, and if plaintiff agreed to pay all taxes, as urged by appellants, it could be required to pay only legal taxes. The fact that the city extended its streets outside of its corporate limits would not give it authority to levy taxes on property situated outside of its corporate limits.

The judgment must be affirmed.

REAVIS, C. J. and FULLERTON, ANDERS and DUNBAR, JJ., concur.

HADLEY, J., not sitting.