[No. 19436.    Department Two.    September 1, 1925.]

THE STATE OF WASHINGTON, *on the Relation of Paul Luketa, Plaintiff*, v. CHARLES R. POLLOCK, *as Supervisor of Fisheries, Respondent.*[1]

STATES (1-1)—TERRITORIAL EXTENT—BOUNDARIES AND JURISDICTION —CONSTITUTIONAL PROVISIONS. The jurisdiction of the state and its courts extend to the three-mile limit off the shore, under the state constitution, art. 24, defining the boundaries as commencing at a point in the Pacific Ocean one marine league due west, and running thence southerly parallel with the coast line one marine league off shore: especially in view of the fact that Congress, in admitting Oregon to the Union, confirmed the state's jurisdiction to the three-mile limit, under the grant to Oregon territory (including what is now Washington) defining the boundary as "along the coast" of the Pacific Ocean.

COUNTIES (1-2)—BOUNDARIES—SHORE LINE OF STATE—TERRITORIAL JURISDICTION—STATUTES. Where the state's jurisdiction extends to the three-mile limit off shore, its subdivision into counties bordering the ocean gives a county like jurisdiction to the three-mile limit.

Application filed in the supreme court July 17, 1925, for a writ of prohibition to prohibit the state super-

[1]Reported in 239 Pac. 8.

visor of fisheries from exercising jurisdiction to regulate fishing in certain waters. Denied.

*Van C. Griffin,* for relator.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

HOLCOMB, J.—This is an application for an original writ of prohibition from this court to prohibit the exercise of jurisdiction by respondent, the state supervisor of fisheries, territorially within the waters of the Pacific Ocean within three miles adjacent to land areas of the counties of Pacific, Grays Harbor, Jefferson and Clallam, to regulate and prevent fishing therein. Respondent demurs to the affidavit and application.

Passing over the objection to the jurisdiction of this court to entertain such original proceeding on account of our determination on the merits, we proceed at once to determine the merits.

Briefly, appellant contends that the jurisdiction of the state of Washington extends no further than the shore line of the state. Relator sets out the history and legislation of the organization of the territory of Oregon which, as organized, included what is now the state of Washington; the act of Congress establishing Oregon Territory; the act of Congress establishing the territory of Washington in 1853, and the Enabling Act authorizing the organization of the territory of Washington into a state, and its admission as a state into the Union. It is shown that, in 1844, the inhabitants of the territory, who organized the territory of Oregon, defined the western boundary line as along the coast of the Pacific Ocean (Oregon Laws, 1843, 1849, p. 72); that Congress, in 1848, when enacting the law establishing the territorial government of Oregon (9 Stat. at Large 323), established the same

territory as the territory of Oregon; that Congress, when enacting the organic act of the territory of Washington in 1853 (Rem. Comp. Stat. p. 21), simply separated that part of the then existing territory of Oregon lying north of the Columbia river to the 49th degree of north latitude, and a line running east of where the 46th degree of north latitude crosses the Columbia river to the summit of the Rocky Mountains; that, in 1889, when Congress passed the Enabling Act authorizing the admission of Washington into the Union, it simply established the then existing territory of Washington as the present state; that Congress never extended nor consented to the boundary line of Washington one marine league west of the sea coast, as it did in Oregon when Oregon was admitted into the Union in 1859, where the Enabling Act said: "Beginning one marine league at sea due west, etc."

It is also shown that each of the acts establishing the counties hereinbefore mentioned which border on the Pacific Ocean, bounds them on the west by the sea coast.

The constitution of Washington, art. 24, § 1, defines the boundaries of the state as,

"Beginning at a point in the Pacific Ocean one marine league due west," then, after describing the other boundaries, ending, "thence running in a southerly course and parallel with the coast line, keeping one marine league off shore, to place of beginning."

Relator contends, however, that while the state's jurisdiction may extend one marine league off shore, though insisting that that is most doubtful, that of the counties is only to the sea coast; and that, therefore, there being no courts having jurisdiction to try persons for violation of law occurring in the three-mile zone, he is entitled to a writ prohibiting the enforcement of laws and orders regulating fishing in that territory,

and from causing his arrest and prosecution for taking fish therein.

Relator first contends that this court has passed upon the matter of jurisdiction over the waters in *Pacific Sheet Metal Works v. Roeder*, 26 Wash. 183, 66 Pac. 428.

That was a case involving the boundaries of a municipal corporation, which, among other things, had been established as "following the shores of Chuckanut and Bellingham Bays in a northerly direction to the point of beginning." The point of beginning was on the beach. It was contended that the western boundary of the city was to be at low tide. We held that, when the boundary line of a city as incorporated begins on the meander line of a donation claim and is run by metes and bounds until it intersects the shore of the bay on which the city is located, and thence follows the bay shore in a specified direction to the point of beginning, the boundary on the shore side must be construed as following the meander line of a described tract when that is the only one that will close at the initial point. It was observed in the course of the opinion that,

"It is quite probable that both the petitioners for the incorporation and the board which established the boundary supposed at the time of the incorporation that the donation meander line extended as far out to sea all along the coast as low tide, and possibly further. But this being true would not change the actual location of said line, or extend the boundaries of the city further west than the line which was intended as the western boundary, which, from all the evidence in this case, appears clearly to be the said donation meander line."

It is clear that the decision in that case is not controlling in this, for in that case artificial boundary

lines were established by the duly constituted authorities to enclose the municipal corporation.

Here the state acts as a sovereign. *State v. Cunningham*, 102 Miss. 237, 59 South. 76, Ann. Cas. 1914D 182. It declared territory to commence and its jurisdiction to extend over the waters of the Pacific Ocean one marine league to the west and keeping parallel to the coast line of the land.

The territorial jurisdiction of the state is disputed by no power, either state or Federal, foreign or domestic. It is embodied in international law. Its title is clear and it is not to be presumed that Congress, in enacting laws for the organization of the territory and of the state, intended that there should be three miles of water off shore over which none but the Federal government would have jurisdiction, and that only in admiralty, or for coast defense. If such formality were necessary, its formal act in confirming the boundaries of Oregon, whose territory had not been formally so described, as beginning one marine league off shore is tantamount to a recognition of the territorial jurisdiction of Oregon before it was organized into a state, and while it yet comprised the territory now within the state of Washington, as belonging to the local states. Even if our state constitution had not declared its territorial limits to extend to one marine league off shore, it is never to be assumed, except upon the clearest evidence, that a sovereign state intends by its own legislation to renounce a right of territorial domain in which its title is clear and absolute. *Mahler v. Transportation Co.*, 35 N. Y. 352.

The Federal supreme court has adjudged that the cession to the states by the Federal authority of admiralty and Federal jurisdiction over the waters of inland seas and bays was the cession to them of general

jurisdiction, and that the state retained unimpaired the residuary powers of legislation and the rights of territorial dominion. *United States v. Bevans,* 3 Wheat. (U. S.) 336; 11 R. C. L. 1042; *Corfield v. Coryell,* Fed. Case No. 3230.

In the last cited case, which involved the seizure of a vessel engaged in the illegal taking of oysters, there was a question, as in this case, as to whether a certain county had jurisdiction within its boundaries, the act establishing the boundaries making them run only to Delaware Bay. Mr. Justice Washington, of the Federal supreme court, then sitting as a circuit justice, said:

"The third general question then, is, whether admitting the *locus in quo* to be within the territorial limits of New Jersey, it is within the limits of the county of Cumberland, in which the proceedings complained of took place? The boundaries of this county towards the bay are thus described in the act which created it: 'Then bounded by Cape May County to *Delaware Bay,* and then up Delaware Bay to the place of beginning.' If the opinion of the court upon the last preceding question as to the construction of the original grant from Charles II, to the Duke of York be correct, it would seem to follow that the western boundary of this county extends only to low water mark on Delaware Bay; the expressions 'to Delaware Bay,' implying nothing more than to the east side of that bay, which the law extends to low water mark."

The same reasoning would seem to apply to the expression "to the sea coast" in the boundary statute establishing the boundary of the counties referred to herein as being used in a general sense to denote their western boundary, but not intending to leave the three-mile strip without any territorial jurisdiction within the state.

In *Mahler v. Transportation Co., supra,* the same condition existed as to the establishment of county and township boundary lines, and the court said:

''We think there is no force in the suggestion, that, if the state owns to the center of the sound, a considerable part of our domain is not partitioned into counties and towns. Even if the statute, in declaring the bounds of the counties bordering on the sound, had limited them, in terms, to the line of low-water mark, it would indicate nothing but the mere fact that the legislature deemed their extension to the exterior water-line of the state a matter of no practical importance; but in the absence of any such limitation, we are clearly of the opinion expressed by this court on a former occasion, that the respective counties and towns, which are bounded generally on the sound, comprehend within their limits the waters between their respective shores and the water-line of the state. This is the usual and reasonable rule in the political apportionment of territory, for the purpose of fixing the limits of civil and criminal jurisdiction.''

The above reasoning appeals forcibly to us in the question of the county boundary lines. The constitution makes the exterior western boundary line of the state three miles off shore. We are bound to regard and accept the provisions of the constitution. The legislature may have thought only of fixing visible boundary lines; but the counties are political subdivisions of the state, and since the state, so far as we are concerned, extends three miles off shore in the Pacific Ocean, so do each of the counties bordering on the Pacific Ocean between their extended northern and southern boundary lines.

Being bound to obey and support the constitution of the state, and the sovereignty existing under it, we do not care to examine further.

We are satisfied that the jurisdiction and dominion of the state extends to the three-mile limit off shore as defined in the constitution, and that each of the political subdivisions created within the state border-

ing on the Pacific Ocean extends to the same exterior limits within its lateral boundaries.

The writ must therefore be and is denied.

BRIDGES, MITCHELL, ASKREN, and PARKER, JJ., concur.