[No. 54067–5.   En Banc.   July 14, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. BRANDON J. SMITH, *Petitioner.*

2

*Dale A. McBeth,* for petitioner.

*James R. Miller, Prosecuting Attorney,* and *Hugh K. Birgenheier, Special Deputy,* for respondent.

*Lenell Nussbaum* on behalf of Washington Appellate Defender Association, amicus curiae for petitioner.

DURHAM, J.—This case addresses the constitutionality of Washington's "harassment" statute. Enacted in 1985 with the aim of preventing "acts and threats which show a pattern of harassment designed to coerce, intimidate, or humiliate the victim", RCW 9A.46.010, this statute provides:

A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury in the future to the person threatened or to any other person; or
(ii) To cause physical damage to the property of a person other than the actor; or
(iii) To subject the person threatened or any other person to physical confinement or restraint; or

(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

RCW 9A.46.020(1).

The harassment statute is part of a multifaceted remedial scheme the Legislature established to protect citizens from harmful harassing behavior. Two other criminal harassment statutes, already in place at the time RCW 9A.46.020 was enacted, address aggression and intimidation motivated by bigotry or other prejudices, RCW 9A.36.080 ("malicious harassment"), and certain forms of harassment, intimidation, torment or embarrassment effected by telephone, RCW 9.61.230. In addition, observing that the problem of harassment is one of increasing severity, the Legislature just last year established mechanisms to improve civil antiharassment protection. RCW 10.14. Washington law thus provides a "full spectrum of legal remedies, both civil and criminal, legal and equitable" designed "to provide meaningful relief in the myriad situations where harassment occurs." Note, *A Remedial Approach to Harassment,* 70 Va. L. Rev. 507, 514 (1984).

Petitioner Brandon Smith challenges this remedial scheme. He complains that RCW 9A.46.020 is not comprehensible to persons of ordinary understanding, and that it is susceptible of arbitrary and discriminatory enforcement. Thus, he asks that we declare the statute void under the constitutional doctrine of "void for vagueness". Because we do not find the harassment statute to be constitutionally infirm in the way Smith suggests, we uphold the statute and affirm Smith's conviction under it.

I

The stipulated facts are as follows: In the midafternoon of May 25, 1985, Smith appeared at the home of Pam

Romine[1] and knocked on the front door. When Romine answered, he grabbed her by the throat and dragged her outside to the porch. Smith made several threats against Romine, at one point stating, "consider yourself dead". He also told Romine that he was going to kill her housemates.

Smith next pushed Romine toward and then into his car, where he pointed out to her a rifle lying on the backseat. He made further death threats, including a threat to blow up Romine's house. Romine broke free, ran to her own car, and drove away.

Romine drove to her fiance's workplace and after conversing with him, drove to a nearby shopping center where Smith again confronted her. Romine told him to stay away from her and said she had called the sheriff. Smith responded that he was not afraid of the sheriff and would kill the sheriff and blow up Romine's house. Romine then filed a complaint with the sheriff's office and deputies arrested Smith later in the day.

Smith was charged with simple assault, criminal trespass and harassment. The Lewis County District Court dismissed the harassment charge on vagueness grounds but proceeded to trial on the other counts, resulting in convictions. On the State's appeal, the Lewis County Superior Court reversed the dismissal of the harassment charge and remanded to the District Court for trial, resulting in a conviction on that count as well. The harassment conviction was then affirmed by the Superior Court and, on discretionary review, by the Court of Appeals. *State v. Smith,* 48 Wn. App. 33, 737 P.2d 723 (1987). We granted the petition for review.

## II

The due process doctrine of "void for vagueness" Smith invokes has two central principles. First, criminality must be defined with sufficient specificity to put citizens on

---

[1]The stipulated facts do not indicate what relationship, if any, Smith had with Romine.

notice as to what conduct they must avoid. Second, legislated crimes must not be susceptible of arbitrary and discriminatory law enforcement. *State v. Brayman,* 110 Wn.2d 183, 196, 751 P.2d 294 (1988); *Kolender v. Lawson,* 461 U.S. 352, 357–58, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). When a criminal statute fails to abide these requirements, we will hold it void and reverse a conviction obtained under it. *See, e.g., Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975).

█ We do not apply this doctrine casually, however. In recognition of the Legislature's constitutional lawmaking role, *see* Const. art. 2, § 1, we approach a vagueness challenge with a strong presumption in favor of the statute's validity. *State v. Maciolek,* 101 Wn.2d 259, 263, 676 P.2d 996 (1984). Thus, "the party challenging the constitutionality of a legislative enactment has the burden of proving it is unconstitutionally vague . . . beyond a reasonable doubt." (Citations omitted.) *Maciolek,* at 263.

Smith's complaint about RCW 9A.46.020 focuses on but three words in the statute: "[w]ithout lawful authority". Analogizing to cases in which we have deemed unconstitutionally vague statutes and ordinances containing such phrases as "lawful order", "without lawful purpose", and "without lawful excuse", Smith contends that the words "without lawful authority" leave uncertain the scope of the proscriptions stated in the harassment statute and allow police, prosecutors and juries to enforce the statute in a subjective and *ad hoc* manner. Thus, Smith asserts, the statute is unconstitutionally vague on its face and void.

## A

█ Before explaining more fully our rejection of Smith's challenge, we will discuss briefly some conceptual difficulties we have in accepting his argument. Smith asks this court to hold that what is "lawful" is not something a person of common understanding can comprehend. And he asks us to declare that the concept of "lawfulness" fails to provide minimal guidelines to prevent arbitrary or discriminatory law enforcement. The former assertion would stand

in sharp contradiction to the well settled maxim that "ignorance of the law excuses no one". The latter would confess a lack of confidence in the most basic operations of our systems of justice.

Rather than persuading, therefore, Smith's argument puts us on our guard. Justice Cardozo long ago observed approvingly "the tendency of precedent to extend itself along the lines of logical development." B. Cardozo, *The Nature of the Judicial Process* *34 (1921), *reprinted in Selected Writings of Benjamin Nathan Cardozo* 107, 118 (M. Hall ed. 1947). Taking in view Smith's argument, and within it our own holdings and opinions, we now ask: Is it truly within the limit of our cases' logic that the concept of "lawfulness" may not be employed as part of a well stated criminal statute?

We will now make clear, if we have failed to do so before, that the answer to this question is "no". None of our decisions, fairly read, establishes that the concept of "lawfulness" is inherently unconstitutionally vague. We have found the concept problematic in some cases only because of the context in which it has been used.

The importance of context is illustrated in our recent decision in *State v. Aver,* 109 Wn.2d 303, 745 P.2d 479 (1987). There, we upheld against a vagueness challenge a statute proscribing obstruction of a "lawfully operated train". Focusing on the context in which the word "lawfully" was used, we determined that the statute is sufficiently definite to put citizens on notice as to what conduct it forbids.

> RCW 81.48.020 forbids a definite course of conduct— willfully obstructing, hindering or delaying the passage of a train. The proscribed activity being clearly stated, the defendants cannot claim constitutional confusion as to the lawfulness of the operation of the train.

*Aver,* at 308.

To a great extent, Smith stands in a very similar position as did the defendants in *Aver.* He cannot deny that RCW 9A.46.020 defines with specificity the conduct it *proscribes.*

He challenges only the portion of the statute which *permits* the otherwise forbidden behavior. While similar "escape clauses" have been deemed so vague as to be unconstitutional, *e.g., State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984) ("without lawful excuse" in child support statute); *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983) ("without lawful excuse" in bail jumping statute); *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982) ("without lawful excuse" in "stop–and–identify" statute); *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980) ("lawful order" in trespass ordinance); *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975) ("unlawful purpose" in wandering and prowling ordinance), we cannot say that such a clause is always improper when its operative meaning is defined by the concept of "lawfulness".

## B

Turning to the applicability of the vagueness doctrine in this case, we address first the doctrine's notice principle. The basic rule is familiar: a statute will be deemed unconstitutionally vague if "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *State v. White, supra* at 98–99; *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926).

People of common intelligence need not always guess at what a statute means by "lawful". Presumptively available to all citizens are the statements of law contained in statutes and in court rulings. Our cases make clear the important relevance of statutory and common law to the meaning of the concept of "lawfulness" as used in legislative enactments.

In *State v. Miller,* 103 Wn.2d 792, 698 P.2d 554 (1985), for example, we upheld against a vagueness challenge a statute criminalizing assault with intent to prevent or resist "lawful apprehension or detention". Former RCW 9A.36-.030. The defendant was convicted under the statute for resisting attempts by grocery store employees to arrest her

for shoplifting. She complained that the statute was vague as applied to an arrest that was attempted by citizens, rather than police. Noting the statutory and common law authority for arrest by citizens and store owners, we affirmed the conviction.

Statutes and common law similarly have informed the interpretations we have given some of our most fundamental and widely used written laws. For example, in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986), we explicated the phrase "without authority of law" as it appears in Const. art. 1, § 7, in the context of an assertedly improper acquisition by the police of a citizen's telephone records:

> Generally speaking, the "authority of law" required by Const. art. 1, § 7 in order to obtain [telephone] records includes authority granted by a valid, (*i.e.,* constitutional) statute, the common law or a rule of this court.

*Gunwall,* at 68–69. And in *State v. McCullum,* 98 Wn.2d 484, 495, 656 P.2d 1064 (1983), we invoked a statutory definition of self–defense to negate the "unlawfulness" element of criminal intent.

Conversely, we have held void criminal statutes employing the concept of "lawfulness" when we have been unable to locate sources of law giving substance to that concept. For example, in *State v. White, supra,* we criticized a "stop–and–identify" statute which criminalized the refusal or failure, "without lawful excuse", to supply information "lawfully required" by a public official:

> [T]he term "lawful excuse" is nowhere defined in RCW Title 9A, and a citizen who is being questioned must necessarily guess as to whether his claim of privilege not to answer under the Fifth Amendment or pursuant to any other case or statutory exemption will be a "lawful excuse".

*White,* at 100. A similar absence of identifiable sources of law animated our decisions in other "lawful excuse" cases. *See State v. Richmond, supra* at 248; *State v. Hilt, supra* at 455.

We do not have to look hard or far to find examples of the "lawful authority" of which RCW 9A.46.020 speaks. A casual perusal of our state's written laws reveals several instances in which an individual lawfully may threaten injury to another. The Court of Appeals notes the most obvious—a police officer apprehending a dangerous criminal. *State v. Smith,* 48 Wn. App. 33, 36, 737 P.2d 723 (1987). The officer's authority to shout "stop, or I'll shoot" derives from his power to "use all necessary means to effect [an] arrest", including force. RCW 10.31.050; *see also* RCW 9A.16.020(1); 9A.16.040.

Threats of bodily injury also lawfully may be made when circumstances justify violent action in self–defense. The use of force against another, including causing injury, is privileged when necessary to protect persons or property. RCW 9.01.200; 9A.16.020(3); 9A.16.050. An individual who is privileged to cause injury undeniably is privileged to threaten to do so. *See Landry v. Daley,* 280 F. Supp. 938, 963 (N.D. Ill. 1968) (3–judge court), *rev'd on other grounds,* 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971).

There may be other situations, ascertainable from statutes, the common law, or perhaps other "legal process", *see Gunwall,* at 69, in which a person lawfully may engage in the conduct that RCW 9A.46.020 criminalizes. We need not—and indeed should not—attempt to delineate such situations here, however. *See Landry v. Daley, supra* at 954, 960–67 (upholding various criminal provisions employing concept of "lawful authority" without identifying precisely the relevant sources of law). *See generally* H. Hart, *The Concept of Law* 126–27 (1961) (criticizing resort to rigid classifications in the interpretation of legal rules). Nor do we fault the Legislature for not doing so. *Cf. People v. Kleffman,* 90 Ill. App. 3d 1, 4, 412 N.E.2d 1057 (1980) (upholding statute prohibiting public official from acting "in excess of his lawful authority" for personal gain, notwithstanding that the meaning of "lawful authority" was not set forth in the statute).

If it is complained that this indefiniteness will leave some citizens uncertain about the scope of the harassment statute's prohibition, we will readily agree. But we will respond that vagueness in the constitutional sense is not mere uncertainty. "If exceptional cases may sometimes arise where opinions might differ, that is no more than is likely to occur, and does occur, in respect of many criminal statutes either upheld against attack or never assailed as indefinite." *Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 502, 69 L. Ed. 402, 45 S. Ct. 141 (1925). Many criminal laws would be rendered void, and still more would be narrowed to the point of ineffectiveness, if we permitted the vagueness doctrine to be used

> to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky,* 407 U.S. 104, 110, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972). Thus, we will not void a legislative enactment merely because all of its possible applications cannot be specifically anticipated. *Cf. United States v. Carpenter,* 791 F.2d 1024, 1029 (2d Cir. 1986) (rejecting suggestion "that one application of a statute cannot admit of another application not raised in the first case"), *aff'd by a divided court,* __ U.S. __, 98 L. Ed. 2d 275, 108 S. Ct. 316, 320 (1987).

We are especially unwilling to do so when, as here, a defendant's conduct falls squarely within the statute's prohibitions. At no time during this litigation has Smith ever suggested that he had any "lawful authority" to engage in the conduct that resulted in his conviction, or even that he was uncertain about his authority. On the facts before us we cannot conceive of any such authority. Thus, we cannot accept Smith's invitation to nullify this important legislative enactment "because of a doubt as to the precise congressional purpose in regard to hypothetical cases that may never arise." *Robinson v. United States,* 324 U.S. 282, 286,

89 L. Ed. 944, 65 S. Ct. 666 (1945); *see also Parker v. Levy,* 417 U.S. 733, 755–57, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974).

Because there are readily ascertainable sources of law giving meaning to the phrase "lawful authority" as it appears in RCW 9A.46.020, therefore, we cannot say that "persons of common intelligence must necessarily guess" at the statute's meaning. *State v. White,* 97 Wn.2d at 98–99. Thus, we do not find the harassment statute unconstitutionally vague for failure to give adequate notice of the conduct it proscribes.

## C

Smith also claims that the harassment statute should be voided because "the term lawful is inherently subjective". This argument rests on the second due process principle the vagueness doctrine enforces, that criminal convictions should not be based on "arbitrary or *ad hoc* determinations of criminality." *State v. Richmond,* 102 Wn.2d at 244. The United States Supreme Court has identified "the requirement that a legislature establish minimal guidelines to govern law enforcement" as the more important of the vagueness doctrine's dual elements, noting that "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Kolender v. Lawson,* 461 U.S. 352, 358, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983) (quoting *Smith v. Goguen,* 415 U.S. 566, 574–75, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974)).

Because, as discussed above, we find that the meaning of "lawful authority" as used in RCW 9A.46.020 is readily ascertainable from objective sources of law, we cannot agree with Smith that the phrase allows prosecution according to "personal predilections". This is not to say that one who harasses another within the meaning of RCW 9A.46.020, and has "lawful authority" to do so, will not face the risk of arrest, prosecution and conviction. We conclude only that

this risk is no different from that which attends any kind of proscribed action undertaken pursuant to legal privilege or lawful authority.

Consider, for example, the laws authorizing violent acts in self–defense. We do not consider these laws to be unconstitutionally vague merely because someone who acts within their scope may be arrested, prosecuted and even convicted for his actions. Rather, we tolerate the burdens law enforcement places on the individual who has rightfully defended himself in order to ensure that he has not violated clear statutory prohibitions.

Nor are we bothered by the element of indefiniteness the self–defense laws create in the offenses—harassment being one—to which these laws apply. The importance of preventing and punishing harassment and other violent behavior outweighs our concern that the exceptional instances where the proscribed behavior is justified will be unfailingly protected. *See* H. Hart, at 130.

### III

As we hope our analysis makes clear, our holding in this case is entirely consistent with our prior applications of the vagueness doctrine to statutes incorporating the concept of "lawfulness". This is not to say that today's holding follows inexorably from the logic of all of our opinions, however. Particularly striking is the facial conflict between some of the language in *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975), with the result we reach here. We thus feel that some further comments on that case, and on the doctrinal difficulties that explain its untoward generality, are in order.

The void–for–vagueness doctrine, as often has been noted, has the ironic quality of itself being ill defined. *See* Recent Development, 56 Wash. L. Rev. 131, 140 (1980). Though many cases recite the doctrine's essential purposes and principles, few offer any cogent reasoning that is properly generalizable to later applications. The problems this

"almost habitual lack of informing reasoning"[2] engenders are twofold.

First, the vagueness doctrine's lack of cogency creates the impression, if not the reality, that courts use it to act "as an open–ended authority to oversee the States' legislative choices in the criminal law area . . ." *Kolender v. Lawson, supra* at 374 (White, J., dissenting). As a result, courts may be doing to legislatures precisely what the vagueness doctrine prohibits legislatures from doing to citizens: leaving to guesswork the determination of what conduct is permissible, and thereby interfering with rights conferred by the constitution. *Cf. State ex rel. Gunning v. Odell,* 58 Wn.2d 275, 278, 362 P.2d 254 (1961) ("The right of a legislative body to exercise its legislative powers will not be invaded by the judicial branch of government."), *modified,* 60 Wn.2d 895, 371 P.2d 632 (1962). The presumption of constitutionality that attaches to legislative enactments seeks to minimize this problem.

While the problem identified above results because the vagueness doctrine's principles are too indefinite, a second problem arises because the reasoning employed in particular applications of the doctrine ring too definitively. As Professor Amsterdam has observed, vagueness decisions often cite cases "not dealing with statutes of similar wording or even of similar sphere of operation". Note, *The Void–for–Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 71 (1960) (authored by Anthony Amsterdam). While one vice of this approach is that it explains too little, *see* Note, 109 U. Pa. L. Rev. at 70–71, another is that it proves too much, producing seemingly far–reaching declarations that particular statutory phrasings are unacceptable in all contexts.

The use to which some of the language in *Bellevue v. Miller, supra,* has been put presents a classic example of

---

[2]Note, *The Void–for–Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 70–71 (1960) (authored by Anthony Amsterdam).

this second problem. In that case we struck as unconstitutionally vague an ordinance proscribing wandering and prowling "in a manner, and under circumstances, which manifest an unlawful purpose or which warrant alarm for the safety of persons or property", *Miller,* at 542 (quoting Bellevue City Code 7.40.080). The opinion contains the following statement: "Legislation which purports to define illegality by resort to such inherently subjective terms as 'unlawful purpose' or 'alarm' permits, indeed requires, an *ad hoc* police determination of criminality." *Miller,* at 545. The seeming generality of this language, as well as its reappearance in later decisions, *see Seattle v. Rice,* 93 Wn.2d 728, 732, 612 P.2d 792 (1980); *State v. White,* 97 Wn.2d 92, 98, 640 P.2d 1061 (1982), explain Smith's reliance on it here.

The passage does not accurately reflect our holding in *Miller,* however, and would remain a misleading departure from our reasoning in this case were we to ignore it here. A more complete appreciation of our opinion in *Miller* makes clear that what *Miller* deemed unconstitutionally vague was not the concept of unlawfulness itself, but the perceptual notion of what conduct manifests a purpose to act unlawfully. *See Miller,* at 544 ("A determination of whether particular activity *manifests* an unlawful purpose or creates alarm is entirely dependent upon a police officer's opinion . . ."). (Italics ours.) As discussed more fully above, we simply cannot approve the notion that the concept of "lawfulness" may never properly be employed in a statute to define criminal conduct.[3]

---

[3]We express no opinion on the continuing vitality of our decision in *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), which appears to have been grounded firmly on the portion of the *Miller* opinion we now repudiate. We note for the record, however, the recent rejection of *Rice* by other courts. *See Johnson v. State,* 739 P.2d 781, 783 (Alaska Ct. App. 1987); *State v. Chiapetta,* 513 A.2d 831, 832 (Me. 1986).

## IV

Smith has failed to demonstrate unconstitutional vagueness in the harassment statute beyond a reasonable doubt. We cannot accept his argument that the phrase "without lawful authority" is inherently vague,[4] and we do not discern indefiniteness of a constitutional character caused by the context in which the phrase is used in RCW 9A.46.020. Thus, we reject Smith's challenge and affirm the Court of Appeals.[5]

BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

---

[4]Nor are we aware of any other court that has accepted such a notion. The following is just a sample of the many reported decisions upholding against vagueness challenges criminal statutes describing illegal conduct in terms of the actor's "lawful authority". *State v. Ford,* 377 N.W.2d 62 (Minn. Ct. App. 1986) (public official acting "in excess of his lawful authority"); *People v. Kleffman,* 90 Ill. App. 3d 1, 412 N.E.2d 1057 (1980) (same); *State v. Martin,* 232 Kan. 778, 658 P.2d 1024 (1983) (eavesdropping "without lawful authority"); *State v. Perry,* 180 Mont. 364, 590 P.2d 1129 (1979) (possession of a weapon by a prisoner "without lawful authority"); *Brunelle v. State,* 360 So. 2d 70 (Fla. 1978) (false imprisonment "without lawful authority"); *Landry v. Daley,* 280 F. Supp. 938 (N.D. Ill. 1968) (3–judge court) (mob action "without authority of law"; intimidation "without lawful authority"), *rev'd on other grounds,* 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971).

Also noteworthy are United States Supreme Court cases upholding statutes containing similar phrasings. *Colten v. Kentucky,* 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972) (disorderly conduct, defined as "refus[ing] to comply with a lawful police order to disperse"); *United States v. Price,* 383 U.S. 787, 16 L. Ed. 2d 267, 86 S. Ct. 1152 (1966) (violating a person's civil rights "under color of law").

[5]Petitioner makes no allegation that RCW 9A.46.020 is unconstitutionally "overbroad" in the sense that it is "'susceptible of sweeping and improper application" to "a substantial amount of protected conduct." *Roberts v. United States Jaycees,* 468 U.S. 609, 630–31, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984). Amicus Washington Appellate Defender Association (WADA) does invoke the doctrine of overbreadth, however, arguing that the harassment statute criminalizes threats of harm so trivial as to be placed beyond the scope of the criminal law by the constitutional protections of free speech.

We reject WADA's argument without deciding the constitutional issues it raises. RCW 9A.46.020 does not apply in an unlimited way to any sort of threat. It proscribes only threats of "bodily injury", "physical damage" and "physical confinement or restraint", made knowingly by the "threator", that the "threatee" reasonably fears will be carried out. By definition, these threats are not "trivial";

UTTER, J. (dissenting)—The Anti–Harassment Act of 1985 purports to make "unlawful the repeated invasions of a person's privacy by acts and threats which show a pattern of harassment designed to coerce, intimidate, or humiliate the victim." RCW 9A.46.010. I commend this goal and maintain that victims of such harassment are entitled to every protection of the law. The act as written, however, is in no way designed to accomplish its purported goals, and contains language so vague that persons of reasonable understanding would have to guess whether their conduct falls within its language. This vagueness works not only to the detriment of potential defendants, but also to the detriment of potential victims who may continue to be harassed by persons who do not believe they fall within the scope of the act.

The majority fails to follow this court's clear line of cases in which we held unconstitutionally vague statutes with the same infirmities as the Anti–Harassment Act of 1985. Furthermore, the majority follows an approach that we soundly rejected in *State v. Richmond*, 102 Wn.2d 242, 683 P.2d 1093 (1984), by attempting to save the act by listing some laws informing potential defendants when there is "lawful authority" to threaten harm, but failing to identify the meaning of that term. The majority adds vagueness to the vagueness doctrine by seeming to overrule settled rulings by this court, and then failing to acknowledge it is doing so, leaving this area of law entirely unsettled.

Because the section of the antiharassment act under which petitioner was convicted is unconstitutionally vague, I would reverse.

---

they by design and in actual effect tend to "coerce, intimidate, or humiliate the victim." RCW 9A.46.010. Even if trivial threats or threats of trivial harms are constitutionally protected, therefore, the harassment statute does not substantially deter their utterance. Thus, the statute is not unconstitutionally overbroad. *Cf. Wurtz v. Risley*, 719 F.2d 1438, 1441 (9th Cir. 1983) (distinguishing statute prohibiting threats a victim reasonably fears will be carried out from an overly broad intimidation statute that proscribes threats without such a limitation).

## I

Smith challenges RCW 9A.46.020 as unconstitutionally vague on its face. The factual setting of a case is irrelevant where the entire statute is challenged as unconstitutionally vague. *Bellevue v. Miller,* 85 Wn.2d 539, 541, 536 P.2d 603 (1975). "When it is alleged that a statute is wholly unconstitutional, the court looks not to the conduct of the defendant, but to the face of the statute to determine whether any conviction under the statute could be constitutionally upheld." *State v. Maciolek,* 101 Wn.2d 259, 262–63, 676 P.2d 996 (1984), quoting *State v. Hood,* 24 Wn. App. 155, 158, 600 P.2d 636 (1979).

This court has held that a statute is presumed constitutional unless its unconstitutionality is proven "beyond a reasonable doubt." *Maciolek,* at 263. This standard requires clarification, as it appears to be the same standard as for conviction of crimes, which serves to protect innocent people from conviction on too little evidence. "[T]he reasonable–doubt standard . . . 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), quoting Dorsen & Rezneck, *In re Gault and the Future of Juvenile Law,* 1 Fam. L.Q. 1, 26 (Dec. 1967). The relation between a statute and the constitution, on the other hand, does not involve the question of proof of facts, but is one of pure law. An unconstitutional statute is void, and the strength of the proof of facts in a given case is irrelevant to our determinations of facial constitutionality. *Bellevue v. Miller, supra.*

There are two main reasons for the strong presumption in favor of upholding statutes against constitutional challenges. The first is our respect for the legislative branch as a co–equal branch of government; as with the judiciary the Legislature is sworn to uphold the constitution. The second is that the Legislature speaks for the people. "Under our constitution, the legislature passes laws and repeals laws as the sole representative of the people." *Gruen v. State Tax Comm'n,* 35 Wn.2d 1, 7, 211 P.2d 651 (1949). This court is

therefore hesitant to strike a duly enacted statute unless fully convinced after a searching legal analysis that the statute is unconstitutional. If, however, our analysis compels the conclusion a statute denies criminal defendants or others their constitutionally protected rights, we are mandated to declare such statute void. Const. art. 1, § 29; *see State ex rel. Luketa v. Pollock,* 136 Wash. 25, 31, 239 P. 8 (1925).

## II

"To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment." *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). The requirement that criminal legislation be definite is premised on two considerations: (1) citizens must have notice of what conduct is criminally proscribed, and (2) vague laws permit arbitrary arrests and convictions. *Bellevue v. Miller, supra; Kolender v. Lawson,* 461 U.S. 352, 358, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983).

This court has repeatedly held unconstitutional criminal statutes in which criminality hinges on some conduct or motivation being "lawful", but there is no guidance as to what "lawful" means in the context of those statutes. In *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), this court found unconstitutional a Seattle ordinance, which stated in part: "[a] person, who . . . enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a *lawful order* not to enter or remain, personally communicated to him by the owner of the premises or some other authorized person." *Rice,* at 730, quoting Seattle ordinance 102843. The *Rice* court found this language unconstitutionally vague.

The term "lawful order" in the Seattle criminal trespass ordinance is not sufficiently specific to inform persons of reasonable understanding of what conduct is

proscribed. Many questions must be answered to determine if an order is a "lawful order." Who is an authorized person? Was the substance of the order lawful? Was there a valid reason for the order? How long is the order to be in effect? The foregoing is but a sample of what must be considered and certainly there are many more questions which could be raised. A person receiving an order must thereupon be able to answer all such questions to know if he has received a "lawful order."

*Rice,* at 731–32.

This court has stricken statutes requiring defendants to determine, without any meaningful guidance, if they have a "lawful excuse" or "lawful purpose". In *Bellevue v. Miller, supra,* this court found unconstitutionally vague a "wandering and prowling" ordinance that defined the crime in part as manifesting an "unlawful purpose". We found the term "unlawful purpose" to be inherently subjective. *Bellevue v. Miller, supra* at 545. In *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982), this court found unconstitutionally vague a statute making it a misdemeanor to obstruct a public servant by failing "without lawful excuse" to provide true information "lawfully required" by a public servant. The court noted that "lawful excuse" is not defined anywhere in the statute, and a citizen must necessarily guess at its meaning. *White,* at 100. Similarly, in *State v. Hilt,* 99 Wn.2d 452, 662 P.2d 52 (1983), this court found unconstitutional a statute prohibiting bail jumping "without lawful excuse" because that term was nowhere defined in the criminal code. *See also State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984) ("without lawful excuse" in child support statute is unconstitutionally vague).

I dissented to this court's opinion in *State v. Aver,* 109 Wn.2d 303, 745 P.2d 479 (1987), because that opinion failed to meaningfully distinguish the *Miller, Rice, Hilt, White, Richmond* line of cases. *Aver,* at 312–14 (Utter, J., dissenting). In *Aver,* this court attempted to distinguish that line of cases on the ground that the statute at issue in *Aver* used the term "lawful order" referring to the conduct of persons other than the accused. *Aver,* at 308. I continue to

maintain that this fails to distinguish *Rice,* in which we held unconstitutional a statute that criminalized disobedience of a "lawful order" by a person other than the accused.

In the instant case, the majority deviates even further than the *Aver* court from our established line of cases, and boldly acknowledges that it must "repudiate" a portion of *Bellevue v. Miller, supra.* See footnote 3. Unlike *Aver,* in which this court rested its holding on the fact that the statute was vague only with respect to conduct of others, here the statute's vague language refers to the accused's own conduct.

The majority goes much further than *Aver* in another respect. The statute at issue in *Aver* criminalized interference with "lawfully operated trains." Although the statute itself did not define "lawfully operated", it is possible to determine from a network of state and federal statutory and regulatory law what is required to be a "lawfully operated train." Similarly, in *State v. Miller,* 103 Wn.2d 792, 698 P.2d 554 (1985), this court found the common law sufficiently defined when a citizen arrest is lawful so as to give potential defendants notice of when an assault is with intent to resist a lawful arrest. Here, the majority fails to find any statute or common law rule or rules that define when there is "lawful authority" to engage in the conduct proscribed by the antiharassment statute.

The majority attempts to define "lawful authority" by listing specific situations that might create such authority. Majority, at 9–10. That approach was rejected by this court in *State v. Richmond,* 102 Wn.2d 242, 683 P.2d 1093 (1984). In *Richmond,* this court found unconstitutionally vague a child support statute proscribing willfully omitting "without lawful excuse" to support a child. We noted that there had been prior judicial interpretation of when such lawful excuse might exist, but that it was not sufficiently specific to clarify the statute. *Richmond,* at 247. We further noted a limitless variety of "lawful excuses" that might result in potential defendants violating the statute "with the impression that their excuse is lawful, and only later

find that it was not. Judges will be forced to decide what constitutes a lawful excuse on a case–by–case basis according to their personal predilections." *Richmond,* at 247.

Similarly, lacking any clear guidelines, a prospective defendant under the Anti–Harassment Act of 1985 may believe he or she has some lawful authority, but does not. The majority even admits that its analysis "will leave some citizens uncertain about the scope of the harassment statute's prohibition," but then trivializes the harm of this predicament. Majority, at 10. It does not explain why vagueness was intolerable when this court authored *Richmond* in 1984, but it is tolerable today.

The majority attempts to distinguish the statute at issue from other vague statutes because the vague language is part of an "escape clause". Majority, at 7. The lure of this distinction is superficial only. A perusal of our criminal code reveals that whether a description of an aspect of a crime is in the main description of the crime or an exculpatory exception makes no difference. No matter how the crime is described, the burden is on the State to prove every element thereof. It is thus irrelevant that the offending portion of RCW 9A.46.020 can be described as a provision that "*permits* the otherwise forbidden behavior." Majority, at 7. Every aspect of a criminal statute can be described as either permitting otherwise forbidden behavior or forbidding otherwise permitted behavior.

Vagueness in a statute is equally intolerable if it is in the description of the proscribed conduct or an exception to the reach of the statute. *State v. Hilt, supra; State v. Hill,* 189 Kan. 403, 369 P.2d 365 (1962); 21 Am. Jur. 2d *Criminal Law* § 17 (1981). The issue is whether the statute gives sufficient notice to defendants and guidelines to law enforcement as to what conduct is proscribed. RCW 9A.46.020 does not do so.

### III

I am disenchanted with the majority's reference to criticisms that the void–for–vagueness doctrine is in itself ill

defined, and that there is an "'almost habitual lack of informing reasoning'". Majority, at 13. The majority even states, "courts may be doing to legislatures precisely what the vagueness doctrine prohibits legislatures from doing to citizens". Majority, at 13. This is in the same opinion in which the majority overrules a consistent, reliable line of cases voiding statutes with certain specific infirmities, and then blandly states, "As we hope our analysis makes clear, our holding in this case is entirely consistent with our prior applications of the vagueness doctrine to statutes incorporating the concept of 'lawfulness'". Majority, at 12. And this is in the same opinion in which the majority in a footnote states, "We express no opinion on the continuing vitality of our decision in *Seattle v. Rice,* 93 Wn.2d 728, 612 P.2d 792 (1980), which appears to have been grounded firmly on the portion of the *Miller* opinion we now repudiate." Footnote 3.

IV

RCW 9A.46.020 is void for vagueness because it is framed in terms so vague that persons of reasonable understanding must necessarily guess at its meaning and differ as to its application. I would reverse the harassment conviction.

PEARSON, C.J., concurs with UTTER, J.