64 Wn. App. 118 (1992)
822 P.2d 1245
THE STATE OF WASHINGTON, Respondent,
v.
RANDALL LEE WASHINGTON, Defendant, BRYAN JAMES FERGUSON, Appellant.
No. 26562-8-I.
The Court of Appeals of Washington, Division One.
February 3, 1992.
*120 Colleen E. O'Conner of Washington Appellate Defender Association, for appellant.
Norm Maleng, Prosecuting Attorney, and Theresa Fricke, Senior Prosecuting Attorney, for respondent.
AGID, J.
Bryan James Ferguson appeals his conviction of first degree reckless endangerment in violation of RCW 9A.36.045. He challenges the constitutionality of RCW 9A.36.045(2), which permits a jury to infer that a person who "unlawfully discharges" a firearm from a moving vehicle was acting recklessly. We affirm.
On December 19, 1989, at about 3 a.m., Reginald Burleson was walking with Frank Kimber and a third teenager in the vicinity of Broadway and Pike Street when a yellow station wagon passed by them. Kimber testified that the two men in the car were "staring at us a certain way". Later, the car passed by again, this time stopping near the teens. One of the two men in the car asked them, "What's up?", and then drove on. As the car began to turn onto Pike Street, Kimber watched it slow down and then saw an outstretched arm pointing a gun out the passenger side window. Seconds later, he heard a shot and glass breaking next to where the teens were standing. The broken glass was close enough that Kimber could "reach out and touch it almost". Burleson heard the shot but did not see the gun. The bullet shattered the front window of a church on Pike Street. No one was injured in the incident.
*121 At about the same time, Frank Eke was driving his taxicab westbound on Pike Street. He saw a "bright flash" from the passenger side window on a light-colored station wagon driving about 200 feet ahead of him. The station wagon was barely moving or stopped. He did not see a gun. Nor did he notice any pedestrians. Both the teens and Eke reported the incident to police.
Randall Washington, the driver of the yellow station wagon, testified that he kept his pistol in an attache case under the front passenger seat and that he thought the gun was unloaded. As he and Ferguson were driving around downtown looking for the freeway ingress, the gun suddenly discharged in Ferguson's hands. Ferguson testified that he had felt something hard on his foot. As he picked it up to see what it was, it "went off" in his hands. He supposed that he must have accidentally pulled the trigger when he lifted the gun. He was not sure in what direction the gun fired or how he was holding it when it went off. An expert testified that 6 pounds of pressure is required to discharge the gun.
Police later pulled over a yellow station wagon fitting the description given by Eke. Ferguson, sitting in the front passenger seat, was wearing a pistol in a shoulder holster. After his arrest, Ferguson told police that he fired the gun in the air and was not shooting at anyone or anything in particular. He said he was not aware that anyone was in the area when he fired the gun.

I

CHALLENGE TO STATUTE'S CONSTITUTIONALITY
Ferguson contends that the statutory term "unlawfully" is unconstitutionally vague as applied, and that the trial court erred in giving a permissive inference instruction. We disagree.
RCW 9A.36.045 reads in pertinent part:
(1) A person is guilty of reckless endangerment in the first degree when he or she recklessly discharges a firearm in a manner which creates a substantial risk of death or serious *122 physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm to the scene of the discharge.
(2) A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct, unless the discharge is shown by evidence satisfactory to the trier of fact to have been made without such recklessness.
(Italics ours.)
[1-5] A party challenging a statute's constitutionality on the theory that it is void for vagueness has the heavy burden of proving its unconstitutionality beyond a reasonable doubt. Spokane v. Douglass, 115 Wn.2d 171, 177, 795 P.2d 693 (1990); State v. Aver, 109 Wn.2d 303, 307, 745 P.2d 479 (1987). Under the due process clause of the Fourteenth Amendment, a statute must define the offense (1) so that a person of ordinary intelligence can understand what conduct is prohibited, and (2) in a way that does not encourage arbitrary or discriminatory enforcement. State v. Carver, 113 Wn.2d 591, 597-98, 781 P.2d 1308, 789 P.2d 306 (1989). "A statute is not unconstitutional `if the general area of conduct against which it is directed is made plain.'" State v. Billups, 62 Wn. App. 122, 129, 813 P.2d 149 (1991) (quoting Seattle v. Huff, 111 Wn.2d 923, 928-29, 767 P.2d 572 (1989)). Ferguson argues that because RCW 9A.36.045 does not define the words "unlawfully discharges", the statute is so vague that it meets neither of these requirements.[1]
When First Amendment rights are not involved, the courts will not consider a challenge to the statute's facial invalidity. Carver, 113 Wn.2d at 599. Thus, since Ferguson does not allege any First Amendment violations, the issue is whether the statute is unconstitutional as applied to the facts of this case. 113 Wn.2d at 599. Ferguson argues that the jury could have construed "unlawful discharge" to include an accidental discharge. Thus, he believes that the statutory inference allowed the jury to conclude that, even if *123 his conduct was accidental, it was nevertheless reckless in violation of RCW 9A.36.045.
In support of his argument that the statutory inference effectively vitiated the defense theory, Ferguson cites several cases in which the Washington Supreme Court held similar statutory language to be unconstitutionally vague. E.g., State v. Richmond, 102 Wn.2d 242, 683 P.2d 1093 (1984) ("without lawful excuse" in criminal nonsupport statute); State v. Hilt, 99 Wn.2d 452, 662 P.2d 52 (1983) ("without lawful excuse" in bail jumping statute); State v. White, 97 Wn.2d 92, 640 P.2d 1061 (1982) ("without lawful excuse" in "stop-and-identify" statute); Seattle v. Rice, 93 Wn.2d 728, 612 P.2d 792 (1980) ("lawful order" in trespass ordinance). In recent cases, however, the Supreme Court has rejected the notion that the term "lawful" in criminal statutes is inherently vague. Carver, 113 Wn.2d at 599; State v. Worrell, 111 Wn.2d 537, 542, 761 P.2d 56 (1988); State v. Smith, 111 Wn.2d 1, 6, 759 P.2d 372 (1988); State v. Miller, 103 Wn.2d 792, 698 P.2d 554 (1985).
In Smith, the court rejected the defendant's argument that the words "lawful authority" made Washington's "harassment" statute, RCW 9A.46.020, unconstitutionally vague, in part because its meaning could be clarified by readily ascertainable sources of law. These sources include statutory and common law, which are deemed to be presumptively available to all citizens. Smith, 111 Wn.2d at 7. The harassment statute challenged in Smith provided that "[a] person is guilty of harassment if ... [w]ithout lawful authority, the person knowingly threatens" to injure another's person or property. (Italics ours.) 111 Wn.2d at 2-3 (quoting RCW 9A.46.020(1)). Finding examples of such "lawful authority" in statutes and case law, the court noted that a police officer may use force to apprehend dangerous criminals and an individual may use force or threaten to do so when justified to act in self-defense. Thus, the court concluded that these sources of law provided sufficient meaning to the phrase that persons of ordinary intelligence would not have to guess at its meaning. 111 Wn.2d at 9-11.
*124 Similarly, the phrase "unlawfully discharges" finds meaning in RCW 9.41.230, which reads:
Every person who shall aim any gun, pistol, revolver or other firearm, whether loaded or not, at or towards any human being, or who shall wilfully discharge any firearm, air gun or other weapon, or throw any deadly missile in a public place, or in any place where any person might be endangered thereby, although no injury result, shall be guilty of a misdemeanor.
Not only does this statute provide an example of an unlawful discharge of a firearm, but, as the Smith court observed, our criminal code and case law are also replete with examples of when an individual may lawfully use force against another. 111 Wn.2d at 9-11; see also RCW 9A.16.020. Thus, through readily ascertainable sources of law, persons of common intelligence are given notice of what conduct the reckless endangerment statute prohibits. We therefore conclude that the statute is not constitutionally defective because it fails to notify citizens of what behavior is prohibited.

II

INFERENCE OF INTENT INSTRUCTION
Ferguson next contends that the jury could have broadly construed "unlawful" to encompass any discharge of a firearm not by a police officer. In other words, he argues that the jury might have believed that only a police officer may lawfully fire a gun. He therefore challenges the trial court's failure to instruct the jury that an accidental discharge could not be an "unlawful" discharge.[2]
*125 In support of this argument, Ferguson relies on State v. Arthur, 42 Wn. App. 120, 708 P.2d 1230 (1985). In Arthur, the court concluded that the jury could have found that the defendant's purportedly accidental conduct was an "unlawful act" that provoked the incident leading to the defendant's assault on the victim. There, the trial court gave the jury the first aggressor instruction:
No person may by any unlawful act create a necessity for acting in self-defense and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.
(Italics ours.) 42 Wn. App. at 121-22 (quoting WPIC 16.04). Arthur was convicted of second degree assault. Just before the assault, Arthur hit another car while pulling out of a store parking lot and ended up in a ditch. When the victim went over to Arthur's car to prevent him from leaving the scene, Arthur stabbed him. On these facts, the court reasoned that the jury could have found both that the collision was accidental and that it constituted the "unlawful act" of negligent or reckless driving. Were the jurors to have drawn such a conclusion, the court continued, they would have been precluded from considering Arthur's claim of self-defense under the trial court's instruction. Accordingly, the court held that the instruction was unconstitutionally vague. 42 Wn. App. at 124-25.
[6, 7] This case is readily distinguishable on its facts from Arthur, and we can see little opportunity for the jury to be confused here. There was only one reasonable inference to be drawn from the objective evidence presented at trial. The bullet shattered a window, it took 6 pounds of pressure on the trigger to fire the gun, and Ferguson was wearing the gun in a shoulder holster when police arrested him. Thus, Ferguson's defense that he accidentally pulled the gun's trigger inside the car is not consistent with the evidence.
*126 Further, both the prosecutor and defense counsel emphasized in closing argument that if the jury found Ferguson's conduct to be accidental, it could not infer that he acted recklessly. In addition to counsel's lengthy arguments concerning the permissive inference, the prosecutor stated, "If it was an accident, then nobody was acting recklessly." While the jury is instructed that counsel's arguments are not evidence, the fact that both defense counsel and the prosecutor argued to the jury that it could not find Ferguson guilty if it found he accidentally fired the gun is significant here. Counsel's arguments on this point, viewed together with the strong evidence that the discharge was not accidental, leave us no doubt that the jury followed the instructions and did not infer recklessness on an improper basis.
Finally, we note that the trial court also instructed the jury on the meaning of "recklessness":
A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and the disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.
Recklessness is also established if a person acts intentionally or knowingly.
Clearly, the conclusion that an "unlawful discharge" includes an accidental discharge, which the jury can infer to be reckless conduct, is at odds with the court's instruction defining recklessness. The trial court's instructions permitted the defense to fully argue its accidental discharge theory. Thus, the lack of an instruction stating that accidental conduct cannot be unlawful did not prejudice the defendant. The jury instructions were therefore sufficient. State v. Bowerman, 115 Wn.2d 794, 809, 802 P.2d 116 (1990).
[8, 9] Ferguson next contends that the trial court erred in giving the inference of intent instruction on the basis that there is no rational connection between the inferred fact of recklessness and the proven fact of "unlawful discharge". RCW 9A.36.045(2) creates an "inference of intent" as applied to first degree reckless endangerment. The statute permits *127 the jury to infer that the defendant possessed a reckless state of mind from the proven fact that he unlawfully discharged a firearm. Such an inference is constitutional only when it is "rationally related" to the proven facts from which it is drawn. "A rational connection must exist between the initial fact proven and the further fact presumed." State v. Jackson, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). In Jackson, the court determined that the trial court erred in giving an inference of intent instruction permitting the jury to infer that the defendant acted with the requisite intent to commit a burglary, when the State presented evidence sufficient to prove only attempted burglary. The State's only evidence was a police officer's testimony that he witnessed the defendant's apparent attempts to shatter a window in a store front door. From this evidence, the jury could have drawn two conclusions, i.e., that the defendant was guilty of either (1) attempted burglary, or (2) vandalism or malicious destruction. The court ruled that "[a]n inference should not arise where there exist other reasonable conclusions that would follow from the circumstances." 112 Wn.2d at 876.
We find Jackson distinguishable on two grounds. First, unlike Jackson, here there was only one logical inference to be drawn from the evidence: that Ferguson did not act accidentally. Second, in Jackson, because the defendant was charged with attempted burglary, the State was required to prove that he possessed an intent to commit another crime once inside the building.[3] The State presented no evidence, however, from which the jury could infer that the defendant had intended to commit another crime. Thus, the instruction given in Jackson improperly permitted the jury to infer intent to commit another crime despite the lack of evidence regarding what Jackson intended to do had he entered the building. By contrast, under the instruction at issue here, *128 the jury may infer that the discharge of the gun, if unlawful, is reckless behavior. The jury had ample objective evidence from which it could conclude that Ferguson's discharge of the gun was unlawful. Unlike the instruction in Jackson, the instruction in this case did not allow the jury to infer that Ferguson intended to commit yet another crime, only that his unlawful behavior satisfied the legal requirements for recklessness.
The judgment is affirmed.
WEBSTER, A.C.J., and FORREST, J., concur.
Review denied at 119 Wn.2d 1003 (1992).
NOTES
[1] Because Ferguson does not brief or argue his contention that the statute is subject to arbitrary or discriminatory enforcement, we do not consider it. State v. Dennison, 115 Wn.2d 609, 629, 801 P.2d 193 (1990).
[2] We initially note that defense counsel did not request the trial court to give an instruction stating that an accidental discharge would not be unlawful. If the defendant believes an impermissible inference can be drawn because the evidence could establish accident, self-defense, or some other basis for finding that this conduct was not unlawful, he should propose an instruction and the court should give it when justified. For example, an appropriate instruction in this case might have read, "If you find that the defendant's actions were accidental, you may not infer that they were reckless." Because the defense did not propose such an instruction, the trial court did not err in failing to give it. State v. Anderson, 42 Wn. App. 659, 663-64, 713 P.2d 145 (1986).
[3] Former RCW 9A.52.030 defined second degree burglary as follows:

"(1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.
"(2) Burglary in the second degree is a class B felony." (Italics ours.)