# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of: | No. 50216-0-II |
| AARON GUSTER CLOUD, | |
| Petitioner. | UNPUBLISHED OPINION |

MELNICK, J. — Aaron Guster Cloud seeks relief from personal restraint imposed following his convictions for drive-by shooting, unlawful possession of a firearm in the first degree, and assault in the first degree.

We deny Cloud's petition because he has not shown that he received ineffective assistance of trial or appellate counsel and the inference of intent instruction is not unconstitutional.

## FACTS

### I. INCIDENT

On July 24, 2013, Michele Ross drove Cloud and Brandon Egeler from Port Orchard to Bremerton. Cloud sat in the passenger seat and Egeler sat in the backseat behind Ross.

Ross stopped at a stoplight next to a truck driven by Kyle Fortuna. Fortuna and Cloud had a verbal confrontation but never left their respective vehicles. Ross was afraid "because of the demeanor of the other guy in the truck" so she turned to drive away, but Fortuna turned and began chasing her car. Ross slammed on the breaks in an effort to get the truck to pass her, and as it passed she heard a "pop." Report of Proceedings (RP) (Oct. 15, 2013) at 86.

Fortuna called 911 and reported he had been shot at by a white male with a shaved head in a car that matched Ross's. *State v. Cloud*, No. 45579-0-II, slip op. at 2 (Wash. Ct. App. Sept. 1, 2015) (unpublished), http://www.courts.wa.gov/opinions/. He met with police nearby and officers removed a bullet from the door panel of his truck.

Ross continued driving and soon she encountered a police car blocking the road. She stopped the car and an officer exited the police car. Cloud exited the car and the officer heard gunshots from the area of Ross's vehicle.

Cloud ran away down the street, ignoring the officer's commands for him to stop. Cloud fell, got up, and then continued running. The officer found a handgun on the ground in the direction Cloud had fled. After a lengthy chase, Officers Matthew Thuring and Stephen Forbragd apprehended Cloud some distance away. Fortuna positively identified Cloud as the man who shot at him.

The State charged Cloud with one count of drive-by shooting, one count of unlawful possession of a firearm in the first degree, and one count of assault in the first degree.[1] It further alleged that Cloud was armed with a firearm at the time of the assault.[2]

II.     TRIAL

A.     MOTIONS IN LIMINE

Before trial, the State moved in limine to prohibit the admission of Cloud's "self-serving hearsay statements to potential witnesses." Clerk's Papers (CP) at 40. It also moved to exclude "'other suspect' evidence, including but not limited to evidence pertaining to Brandon Egeler, without prior finding by the trial court that the other suspect evidence is established by proper

---

[1] RCW 9A.36.045, 9.41.040(1)(a), 9A.36.011.

[2] RCW 9.94A.825.

foundation, as held in *State v. Mak*."[3]  CP at 40.  Cloud opposed both of these motions in limine. The court granted both motions, but left open the option for Cloud to readdress the issues at trial outside the presence of the jury.

### B.    DOC WARRANT

On cross-examination, the defense sought to elicit testimony from Detective Crystal Gray that Cloud had been apprehended not only for the crimes in the case, but also for an outstanding Department of Corrections (DOC) warrant.  The State objected to this testimony, arguing that it would "go down the road" to self-serving hearsay from Cloud.  RP (Oct. 21, 2013) at 525.  The defense argued that the DOC warrant was admissible as evidence relating to Cloud's motivation for fleeing and it contrasted with the State's position that his flight was evidence of consciousness of guilt.

The trial court asked Cloud if he intended to present any other evidence connecting the DOC warrant to the issue of flight.  He answered that he did not.[4]  The court then sustained the State's objection.  It ruled that evidence of the DOC warrant alone was speculative to explain Cloud's flight.  The court stated that "the mere existence of a warrant . . . is insufficient to argue that that was the cause for the flight without any other information" but that there was "sufficient information . . . as part of the record for the prosecution to argue consciousness of guilt as it relates to flight."  RP (Oct. 21, 2013) at 530.

---

[3] 105 Wn.2d 692, 718 P.2d 407 (1986).

[4] On direct appeal, Cloud argued that the trial court erred by excluding evidence of his DOC warrant.  *Cloud*, No. 45579-0-II, slip op. at 11.  We ruled that the invited error doctrine precluded him from making this argument, because he "complain[ed] that the trial court excluded evidence that Cloud said he was not offering."  *Cloud*, No. 45579-0-II, slip op. at 7.

3

After the State rested, the defense recalled Forbragd to testify that, when he had apprehended Cloud, Cloud said "Gee, guys, it's just a DOC warrant. All I have is a warrant." RP (Oct. 21, 2013) at 558. The State objected, arguing that this testimony would be self-serving hearsay precluded by its motion in limine.

The court ruled that the statement was non-hearsay because it showed Cloud's state of mind and because it was relevant to provide an explanation for Cloud's flight other than consciousness of guilt.

### C. JURY INSTRUCTIONS

Jury instruction 10 stated:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that death or a serious physical injury to another person may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.
> When recklessness is required to establish an element of a crime, the element is also established if a person acts intentionally.

CP at 103.

Jury instruction 13 stated: "A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct. This inference is not binding upon you and it is for you to determine what weight, if any, such inference shall be given." CP at 106.

Neither party objected to either of these instructions.

4

D.    CLOSING ARGUMENTS

Before closing arguments, Cloud announced that he intended to argue the issue of identification because there were two people in the car described as white males with shaved heads.[5]

The trial court stated that the State's motion in limine required that, before any "other-suspect evidence" be admitted, it must be established by proper foundation per *Mak*. RP (Oct. 22, 2013) at 582. Cloud argued that "there is evidence to show there are potentially more suspects to this case than just Mr. Cloud." RP (Oct. 22, 2013) at 583. He further argued that his proposed argument would go toward reasonable doubt. "Rather than saying there's another suspect, it goes to the issue of reasonable doubt as to whether they got the right suspect." RP (Oct. 22, 2013) at 583. He contended that *Mak* was only about the admission of evidence and not about limiting the defense's ability to argue the evidence in closing.

The trial court asked Cloud if he intended to specifically argue that Egeler was "likely our shooter," and he responded that he did not. RP (Oct. 22, 2013) at 584. He only intended to argue "[t]hat the identification by Mr. Fortuna of a white male with a shaved head could cover more than one person in that car." RP (Oct. 22, 2013) at 584. The court allowed the defense to make this argument because the evidence at trial supported it. The court forbade Cloud from arguing that Egeler "must have been the shooter." RP (Oct. 22, 2013) at 586.

The State also moved to prohibit the defense from arguing facts not in evidence, including what a DOC warrant is or why it would be a reason to flee. Cloud and the court both agreed.

---

[5] Forbragd testified that Egeler had a shaved head. Several other witnesses testified that Egeler had medium or short hair.

In his closing arguments, Cloud argued that the State had failed to satisfy its burden to prove Cloud was the shooter. He argued that Fortuna had identified a man with "a shaved head" and pointed out that a witness had testified "that the other male passenger in that car had a shaved head." RP (Oct. 22, 2013) at 639. Cloud also argued that he had run from police because he knew there was a warrant out for his arrest.

The jury found Cloud guilty on all counts.

III.    POST-CONVICTION PROCEEDINGS

This court affirmed Cloud's convictions on direct appeal. *Cloud*, No. 45579-0-II. He filed this timely personal restraint petition (PRP).

ANALYSIS

I.    PERSONAL RESTRAINT PETITION STANDARD OF REVIEW

A petitioner may request relief through a PRP when he or she is under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.2d 884 (2010) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). In addition, "the petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations." *Monschke*, 160 Wn. App. at 488; RAP 16.7(a)(2)(i).

In evaluating PRPs, we may (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined

6

solely from the record; or (3) grant the personal restraint petition without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

In PRPs, we ordinarily will not review issues previously raised and resolved on direct review. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999). Raising the same issue but presenting it in a different form does not justify a second review. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 719-20, 16 P.3d 1 (2001); *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 789 P.2d 731 (1990).

II.    INEFFECTIVE ASSISTANCE OF COUNSEL

A.    LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. The prejudice that a petitioner must show in a personal restraint petition that alleges ineffective assistance of counsel is the same as if it was raised in a direct

appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012). If either prong is not satisfied, the defendant's claim fails. *Davis*, 152 Wn.2d at 673. .

An appellant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

"Conversely, a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). The defense counsel's strategic decisions must be reasonable. *Grier*, 171 Wn.2d at 34. The standard for proving prejudice is the same on collateral attack as on direct appeal. *Crace*, 174 Wn.2d at 846-47.

To show ineffective assistance of appellate counsel on collateral review, a petitioner must show "that the legal issue that appellate counsel failed to raise had merit" and that "he or she was actually prejudiced by appellate counsel's failure to raise the issue." *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 778, 100 P.3d 279 (2004).

B.      DOC WARRANT

Cloud alleges that his trial attorney's failure to offer his DOC warrant into evidence constituted ineffective assistance of counsel. He contends that no reasonable counsel would have failed to introduce the warrant and that Cloud was prejudiced because the warrant would have "bolstered his defense and undermined a prominent theme advanced by the State." PRP at 8.

There is "no claim for ineffective assistance of counsel when the challenged action goes to a legitimate trial strategy or tactic." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008). To overcome the presumption that his trial counsel was effective, Cloud must demonstrate

that "there is no conceivable legitimate tactic explaining counsel's performance." *Reichenbach*, 153 Wn.2d at 130. Here, it is conceivable that Cloud's trial attorney did not want to offer evidence of Cloud's prior misconduct. Instead, he found a way to get Cloud's knowledge of the warrant before the jury so he could argue why Cloud fled without introducing evidence of the warrant itself. Failure to introduce the actual warrant as evidence did not constitute deficient conduct.

Even if we assume deficient conduct, Cloud must also show a reasonable probability that the outcome of the proceedings would have been different had his attorney introduced the warrant. *Grier*, 171 Wn.2d at 34. Cloud does not offer any argument that an attempt to admit his DOC warrant into evidence would have been successful, nor how it would have changed the outcome of the case. His trial attorney argued in closing that Cloud fled from police because of the warrant. Cloud does not explain, nor can we understand, how admitting the actual warrant would have changed the outcome of the proceedings. Thus this argument fails.

C.      IDENTITY OF SHOOTER

Cloud contends that his attorney was ineffective for voluntarily foregoing his chance to argue that Egeler was the shooter. He claims that his attorney disclaimed his right to argue that Egeler was the shooter and that, if counsel had made the argument, it would have raised a reasonable doubt as to the shooter's identity.

Assuming, without deciding that Cloud's attorney's conduct was deficient, Cloud must show a reasonable probability that his attorney's decision to forego arguing that he should have been allowed to argue that Egeler was the shooter changed the outcome of the case. Cloud cannot show any such prejudice. He does not suggest any ground upon which the trial court would have

allowed argument that Egeler was the shooter.[6] Cloud's attorney would not have been permitted

to argue facts not in evidence. *State v. Perez-Cervantes*, 141 Wn.2d 468, 474, 6 P.3d 1160 (2000).

To the extent Cloud generally complains of his attorney's failure to argue the identity of

the shooter, his claim fails. His attorney did argue in closing that Fortuna had identified a

passenger in the car who was "white with a shaved head" and that a police officer had indicated

that that described multiple passengers in the car. RP (Oct. 22, 2013) at 639. Because Cloud's

attorney actually argued the identity issue, Cloud cannot demonstrate any prejudice.

D.      RECKLESSNESS INSTRUCTION

Cloud contends that his trial counsel was ineffective because he failed to object to the use

of a standard jury instruction defining recklessness. Cloud argues that the recklessness instruction

should not have been given because a WPIC comment states that it impermissibly lowers the

State's burden of proof. We disagree with Cloud.

The disputed jury instructions states:

> A person is reckless or acts recklessly when he or she knows of and disregards a substantial risk that death or a serious physical injury to another person may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation.
> When recklessness is required to establish an element of a crime, the element is also established if a person acts intentionally.

CP at 103 (Instr. 10). The WPIC comment to the standard drive-by shooting instruction cautions:

> By the phrasing of this statute, the adverb "recklessly" appears to modify only the discharge of the firearm. Under the statute, a separate element that must also be proven is the substantial risk of death or injury that was actually created by that "wrongful act." Thus, the risk of death or injury should not be incorporated into the definition of recklessness as it might be with differently phrased crimes. For this crime, recklessness should be defined as including a disregard of "the

---

[6] Cloud argues that evidence that Egeler perpetrated the crime would have been admissible because it would be relevant. PRP at 14. However, he does not suggest that any evidence that Egeler was the shooter exists. He alleges that his attorney failed to effectively argue in closing, not that he failed to introduce evidence.

substantial risk that discharge of a firearm may occur." Of course, the jury would also be instructed that an intentional or knowing discharge would establish this element.

11 WASHINGTON PRACTICE: WASHINGTON PATTER JURY INSTRUCTIONS: CRIMINAL 35.31 cmt. at 512 (4th ed. 2016) (WPIC) (internal citations omitted).

There is "no claim for ineffective assistance of counsel when the challenged action goes to a legitimate trial strategy or tactic." *Kolesnik*, 146 Wn. App. at 801. It is unclear what effect, if any, the instruction had on the State's burden of proof. The comment suggests that "reckless" refers only to the discharge of a firearm, such that a person could be convicted *without* evidence of recklessness with regard to a substantial risk of death or injury. WPIC 35.31. The instruction as provided, however, required the State to prove additionally that Cloud knew of and disregarded "a substantial risk that death or a serious physical injury to another person may occur." CP at 103. It is conceivable that Cloud's trial attorney tactically decided not to challenge this instruction because he believed that giving it effectively heightened the State's burden of proof. Therefore, Cloud cannot show his attorney's actions were deficient.

III.     INFERENCE JURY INSTRUCTION

Cloud contends that the instruction allowing the jury to infer recklessness from the discharge of a firearm from a moving vehicle violated his due process rights. He claims that allowing the jury to infer recklessness impermissibly lowered the State's burden of proof. He compares this instruction to the "flight = consciousness of guilt" instruction determined to be unconstitutional in *State v. Reed*, 25 Wn. App. 46, 49-50, 604 P.2d 1330 (1979). PRP at 18-19.

A person is guilty of the crime of drive-by shooting:

[W]hen he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the

immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.

RCW 9A.36.045(1). The statute also provides that: "A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct, unless the discharge is shown by evidence satisfactory to the trier of fact to have been made without such recklessness." RCW 9A.36.045(2).

Jury instructions are sufficient "if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *State v. Irons*, 101 Wn. App. 544, 549, 4 P.3d 174 (2000). "[J]ury instructions read as a whole must make the relevant legal standards manifestly apparent to the average juror." *State v. Marquez*, 131 Wn. App. 566, 575, 127 P.3d 786 (2006).

A valid permissive inference instruction is one which "'allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.'" *State v. Garbaccio*, 151 Wn. App. 716, 740, 214 P.3d 168 (2009) (quoting *County Court v. Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979)). Such an inference "is constitutional only when it is 'rationally related' to the proven facts from which it is drawn." *State v. Washington*, 64 Wn. App. 118, 127, 822 P.2d 1245 (1992).

When "an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow 'more likely than not' from proof of the basic fact." *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994) (quoting *Allen*, 442 U.S. at 167). If the inference is the "sole and sufficient" proof of an element, the presumed fact must flow beyond a reasonable doubt to prevent the State from circumventing its burden of proof using inferences. *State v. Brunson*, 128 Wn.2d 98, 107, 905 P.2d 346 (1995). Cloud acknowledges that, in his case, the standard for whether the permissive inference instruction is constitutional is "more

likely than not." PRP at 18. That means the inference is only a part of the prosecution's proof supporting an element of the crime.

The instruction Cloud challenges stated: "A person who unlawfully discharges a firearm from a moving motor vehicle may be inferred to have engaged in reckless conduct. This inference is not binding upon you and it is for you to determine what weight, if any, such inference shall be given."[7] CP at 106 (Instr. 13).

*Washington* addressed the specific drive-by instruction that Cloud challenges in this case. 64 Wn. App. at 126-27. The defendant argued that there was "no rational connection between the inferred fact of recklessness and the proven fact of 'unlawful discharge.'" *Washington*, 64 Wn. App. at 126. The court concluded that the "jury may infer that the discharge of the gun, if unlawful, is reckless behavior." *Washington*, 64 Wn. App. at 128.

As in *Washington*, recklessness "more likely than not" followed from Cloud's unlawful discharge of a firearm from a moving vehicle. Permitting the jury to draw this inference did not deprive Cloud of due process of law.

IV.     INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Cloud raises ineffective assistance of appellate counsel claims related to many of his above assignments of error, arguing that his attorney on direct appeal was ineffective for failing to raise many argument.

"If a petitioner raises ineffective assistance of appellate counsel on collateral review, he or she must first show that the legal issue that appellate counsel failed to raise had merit." *Dalluge*, 152 Wn.2d at 777-78. The petitioner must additionally show actual prejudice caused by appellate counsel's failure to raise the issue. *Dalluge*, 152 Wn.2d at 778. "Failure to raise all possible

---

[7] WPIC 35.30.01.

nonfrivolous issues on appeal is not ineffective assistance, and the exercise of independent judgment in deciding what issues may lead to success is the heart of the appellate attorney's role." *Dalluge*, 152 Wn.2d at 787.

Cloud has not demonstrated that any of the above arguments have merit. Therefore, he has not shown ineffective assistance of appellate counsel for failure to raise them.

We deny Cloud's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.40, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Bjorgen, C.J.