

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 3 2018

CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Sept 13, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SOUTHWICK, INC., a Washington corporation, | ) ) ) | No. 95237-0 |
| Petitioner, | ) ) ) | |
| v. | ) ) | En Banc |
| WASHINGTON STATE, AND ITS DEPARTMENT OF LICENSING BUSINESS AND PROFESSIONS DIVISION; WASHINGTON STATE FUNERAL AND CEMETERY BOARD, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | Filed  SEP 1 3 2018 |

JOHNSON, J.—This case challenges a fine imposed on a cemetery for relocating cremains without giving prior notification of its actions to next of kin. This case looks at RCW 68.50.140(4) and what it means to act "without authority of law" under that statutory section. It is a class C felony to remove "human remains from a place of interment, without authority of law." RCW 68.50.140(4). Also, RCW 68.50.220 allows cemeteries to move remains around within a

cemetery, but they must first notify next of kin of their actions. Southwick Inc., a cemetery owner and operator, disinterred 37 sets of cremains (human cremated remains) without first notifying next of kin of its actions. Cemeteries are statutorily authorized to make their own rules concerning their day-to-day operations under RCW 68.20.060. Southwick claims it was acting under its own rules in disinterring the cremains without notice to family members, so it was acting with "authority of law." Because Southwick's rules cannot supersede state statutes, we affirm the Court of Appeals and hold Southwick was not acting with "authority of law" when it disinterred the cremains and thus violated RCW 68.50.140(4). Additionally, we hold that Southwick also violated RCW 68.50.220 for failing to notify next of kin before disinterring the cremains.

## FACTS AND PROCEDURAL HISTORY

Forest Cemetery, established in 1857, was operated for many years by the Forest Cemetery Association. In 1947, the association granted the city of Olympia (City) a waterline easement across the property. The City installed a large waterline in the easement that provided the City with its main water supply.

By the 1980s, the Forest Cemetery Association had disbanded and the cemetery fell into disrepair. Southwick purchased Forest Funeral Home and Cemetery and took over the cemetery operations. Southwick met with the Washington State Funeral and Cemetery Board (Board) and agreed to honor all the

existing contracts entered into by the prior owner. It had no knowledge of the City's easement on the property.

Pursuant to RCW 68.20.060 and 68.24.110, Southwick adopted rules and regulations for its day-to-day operations. Southwick's rule 10(j) states:

> The Corporation reserves the right to correct errors made by it in making interments, disinterments or removals . . . . In the event the error shall involve the interment of the remains of any person in such property, the Corporation reserves and shall have the right to remove and reinter the remains in the property conveyed in lieu thereof.

Admin. Record (AR) at 86, 112. At some point, Southwick created the Devotion Urn Garden in an area immediately adjacent to a large monument, constructed by the cemetery's previous owner. Southwick entered into contracts for cremains to be buried in small plots in this urn garden.

On August 25, 2011, the City advised Southwick of its waterline easement that ran through the cemetery and requested Southwick remove any obstructions in the easement area. After the City performed a survey, Southwick realized it had placed the urn garden in the easement. Southwick then moved the urn garden about nine feet to relocate it outside the easement area. The garden and relationship of the plots within retained the same alignment.

A granddaughter of two people whose cremains had been buried in the urn garden filed a complaint that Southwick had moved the cremains without providing advance notice of their relocation. On August 26, 2014, the Department

of Licensing (Department)[1] issued a statement of charges against Southwick, alleging Southwick had violated RCW 68.24.060,[2] 68.50.200,[3] and 68.50.220. Only the last alleged violation is relevant to this case as it stands before us. RCW 68.50.220 provides:

> RCW 68.50.200 and 68.50.210 do not apply to or prohibit the removal of any human remains from one plot to another in the same cemetery or the removal of [human] remains by a cemetery authority from a plot for which the purchase price is past due and unpaid, to some other suitable place; nor do they apply to the disinterment of human remains upon order of court or coroner. However, a cemetery authority shall provide notification to the person cited in RCW 68.50.200 before moving human remains.

(Alteration in original.)

Both parties moved for summary judgment. On October 29, 2015, a presiding officer of the Board held that Southwick had violated RCW 68.50.140(1),[4] which provides, "Every person who shall remove human remains,

---

[1] The Department issued its statement of charges through the Board, which is its relevant disciplinary authority under chapter 18.235 RCW. *See* RCW 18.235.005, .020(2)(b)(iv); RCW 68.05.430.

[2] This violation is not before us.

[3] The Department later amended its statement of charges, withdrawing its alleged violation of this statute and adding a violation of RCW 18.235.130(8) for unprofessional conduct.

[4] Although this is a criminal statute, neither of the parties argued for application of the rule of lenity, and we decline to do so. The Board has authority to discipline cemeteries that violate any provision of chapter 68.50 RCW. RCW 68.05.090, .173. Applying the rule of lenity would undermine the purpose of the Board's authority.

4

or any part thereof, from a grave, vault, or other place where the same has been buried . . . without authority of law . . . is guilty of a class C felony." The Department had not alleged a violation of that statute. The presiding officer also found Southwick had committed unprofessional conduct under RCW 18.235.130(8) due to its violation of RCW 68.50.140.

Southwick filed a motion for reconsideration by the Board of the presiding officer's summary judgment order alleging a due process violation, which is not before us,[5] and arguing that it had not violated RCW 68.50.140 because it was not acting without "authority of law."

After a hearing on Southwick's motion for reconsideration, the Board entered a final order affirming the summary judgment order, holding Southwick had violated RCW 68.50.140 and RCW 68.24.060 and thus engaged in unprofessional conduct under RCW 18.235.130(8). It imposed a fine of $7,500, as well as a requirement to attempt notification of next of kin and placement of notice in the local newspaper for three days.

Southwick petitioned Thurston County Superior Court for review of agency action under the Administrative Procedure Act (APA), chapter 34.05 RCW, alleging that the Board had misapplied RCW 68.50.140 and 68.24.060 and that its

---

[5] As Southwick's due process claim is not before us, its resolution in the lower courts is not discussed further.

ruling was not supported by substantial evidence. RCW 34.05.570(3)(d), (e). The superior court affirmed the Board's final order. The Court of Appeals, Division Two, also affirmed the RCW 68.50.140 violation, holding that Southwick's internal rules and regulations did not provide "authority of law" for purposes of RCW 68.50.140. *Southwick, Inc. v. Wash. State Funeral & Cemetery Bd.*, 200 Wn. App. 890, 893, 403 P.3d 934 (2017). The court reversed the Board's finding of a RCW 68.24.060 violation and remanded to the Board with instructions to reconsider appropriate discipline of Southwick for its violations.

Southwick appealed both the due process and the "authority of law" issues to this court. We granted review of only the "authority of law" issue. *Southwick, Inc. v. Wash. State Funeral & Cemetery Bd.*, 190 Wn.2d 1001, 412 P.3d 1260 (2018).

## ISSUE

Whether Southwick was acting with "authority of law" when it moved the cremains in response to the City's request without notifying next of kin.

## ANALYSIS

Our review of the Board's final order is governed by the APA. RCW 34.05.570. As relevant to this case, we may reverse the Board's order if it is based on an error of law or if it is unsupported by substantial evidence. RCW 34.05.570(3)(d), (e).

We review issues of statutory interpretation and an agency's conclusions of law de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)); *Ames v. Dep't of Health, Med. Quality Assur. Comm'n*, 166 Wn.2d 255, 260, 208 P.3d 549 (2009) (citing *Kellum v. Dep't of Ret. Sys.*, 61 Wn. App. 288, 291, 810 P.2d 523 (1991)). However, we give substantial weight to an agency's interpretation of the law it administers, especially when the issue falls within the agency's expertise. *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991) (citing *St. Francis Extended Health Care v. Dep't of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990)). In this case, the Board is charged with administering the statutes in chapter 68.50 RCW. RCW 68.05.090. Thus, the issue in this case is within its expertise, and we accord its interpretation substantial weight.

RCW 68.50.140(4) provides, "Every person who removes, disinters, or mutilates human remains from a place of interment, without authority of law, is guilty of a class C felony."[6] RCW 18.235.130(8) makes it unprofessional conduct to violate any provision of chapter 68.50 RCW, and RCW 18.235.110(1)(h)

---

[6] The Department asserts that "person," as used in the statute, includes corporations; otherwise, it would have unintended consequences throughout chapter 68.50 RCW. Southwick does not disagree.

7

empowers the Board to impose civil penalties, including monetary penalties up to $5,000 per violation.

Chapter 68.50 RCW provides some exceptions and defenses (or authorization) to this general prohibition on disinterring human remains. Remains may be disinterred with a surviving family member's consent or, if a relative's consent cannot be obtained, by court order. RCW 68.50.200. These requirements do not apply when a cemetery authority moves remains within a cemetery, but "a cemetery authority shall provide notification to the [next of kin] before moving human remains." RCW 68.50.220. The basis for the statutory violations in this case is not giving statutorily required notification to next of kin before disinterring the cremains. Under RCW 68.50.140(4) and 68.50.220, a violation of .140(4) may also be a violation of .220; the lack of prior notice is common to both. Conversely, notice by a cemetery before disinterment in accordance with .220 is a defense to a violation of .140(4).

Southwick argues it acted pursuant to its own rule 10(j) when it moved the cremains to correct the error of interment within the easement area. [7] RCW

---

[7] Southwick claims the Board never considered its argument that it had authority of law because it was acting pursuant to its own rules, but the summary judgment order includes an explicit finding that Southwick's statutory violations "cannot be overridden by a rule adopted by [Southwick] on the Correction of Errors." AR at 283. The presiding officer reasoned that Southwick's rule was a limitation of liability clause and applied to contract enforcement, but this action was for unprofessional conduct rather than liability, so Southwick's rule did not apply.

8

68.20.060 empowers cemetery authorities to "make . . . and enforce rules and regulations for the use, care, control, management, restriction and protection of all or any part of its cemetery." RCW 68.56.060 gives cemetery authorities "the authority of a police officer for the purpose of . . . enforcing the rules and regulations of the cemetery association, the laws of the state, and the ordinances of the city or county, within the cemetery over which he or she has charge." RCW 68.24.110 authorizes cemeteries to "sell and convey plots or rights of interment subject to the rules in effect or thereafter adopted by the cemetery authority." Given this statutory authority to create, implement, and enforce its own operating rules, Southwick argues that it was acting with "authority of law" when it disinterred the cremains pursuant to its rules and thus did not violate RCW 68.50.140(4).

Southwick relies on language from *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986) for its definition of "authority of law." In that case, we defined "authority of law" as including any "authority granted by a valid . . . statute, the common law or a rule of this court." *Gunwall*, 106 Wn.2d at 68-69. This definition does not help Southwick for two reasons. First, Southwick's operating rules are not statutes, part of the common law, or a rule of the court. Therefore, per the *Gunwall*

---

The Board later incorporated the presiding officer's conclusions of law into its final order. There is nothing to suggest the Board did not adequately consider Southwick's argument.

language, Southwick's rules are not "authority of law." Southwick argues that it sold interment rights pursuant to contracts that incorporated these rules, which it argues are *common law* contract rights. This argument strains to place its rules within the *Gunwall* language, but Southwick, simply stated, cannot contract to evade statutory requirements. Parties may not contract around existing state law, and Southwick's argument that its rules establish authority of law fails.

Second, *Gunwall* defines the "authority of law" required by article I, section 7 of the Washington Constitution as it relates to search and seizure law.[8] By contrast, the "authority of law" in this case is provided by the specific statutes establishing exceptions to chapter 68.50 RCW's general prohibition on disinterment. Under the statutory exceptions, remains may be disinterred with the consent of a specified family member or, if familial consent cannot be obtained, by superior court order. RCW 68.50.200. Another exception is that cemeteries may move remains from one plot to another without consent, but they must notify next of kin before doing so. RCW 68.50.220. These statutes therefore establish the "authority of law" to disinter human remains within the statutory framework, and prior notification is the basic rule to which the exceptions apply.

---

[8] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7.

Southwick offers no case law supporting its argument that its rule making authority includes the authority to make rules that conflict with state statutes. The Department, on the other hand, cites numerous authorities holding that legislatively delegated rule making authority does not permit an agency, municipality, or corporation to make rules that conflict with existing state law. RCW 23B.03.020(2)(c) (corporations may not adopt bylaws inconsistent with state law); *Arnold v. City of Seattle*, 185 Wn.2d 510, 528, 374 P.3d 111 (2016) ("'A local regulation conflicts with state law where it permits what state law forbids or forbids what state law permits.'" (quoting *State v. Kirwin*, 165 Wn.2d 818, 825, 203 P.3d 1044 (2009))); *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846 (2007) ("deference to an agency's interpretation is never appropriate when the agency's interpretation conflicts with a statutory mandate"); *Edelman v. State ex rel. Pub. Disclosure Comm'n*, 152 Wn.2d 584, 591, 99 P.3d 386 (2004) ("An agency may not promulgate a rule that amends or changes a legislative enactment." (citing *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 140 Wn.2d 615, 634, 999 P.2d 602 (2000))); *Brown v. City of Yakima*, 116 Wn.2d 556, 561, 807 P.2d 353 (1991) (an "ordinance may also violate Const. art. 11, § 11 if it directly and irreconcilably conflicts with the statute" (citing *Kennedy v. City of Seattle*, 94 Wn.2d 376, 383-84, 617 P.2d 713 (1980))). We agree.

Southwick argues that the Court of Appeals' interpretation of RCW 68.50.140 threatens to undermine the efficacy of cemetery-issued rules across the state.[9] It also argues that the court's interpretation "emasculates"—or, in our words, "disempowers"—the trifecta of statutes allowing cemeteries to create, implement, and enforce these rules. However, the opposite seems true—Southwick's position undermines the efficacy of Washington's disinterment statutes. Southwick argues the legislature has granted cemeteries authority independent of other statutes, but this is not so. Through RCW 68.20.060, the legislature permits cemeteries to adopt and enforce internal rules and regulations consistent with, not independent of, state law. Importantly, nowhere under the statutory scheme is the express notice requirement established under RCW 68.50.220 excused.

As the Department points out, if cemetery rules superseded state statutes, cemeteries could adopt rules exempting themselves from every statute governing cemetery operations, such as the statute prohibiting cemeteries from refusing to bury a nonwhite person. RCW 68.50.035. Nothing in RCW 68.20.060 or 68.24.110 acts to relieve cemetery authorities of the obligation to comply with state law.

---

[9] As the Department points out, Southwick has not shown that any other cemetery is having similar problems with creating or enforcing cemetery rules that conflict with state statutes.

Under Southwick's interpretation of the statutory framework, RCW 68.50.220 would be meaningless. A statutory scheme establishing and governing disinterment requirements cannot be interpreted to allow cemeteries to create rules by contract exempting themselves from complying with those same statutes.

Southwick also argues that RCW 68.50.140(4) does not apply to its case's facts. Under the statute, a person is guilty of a class C felony if he or she removes "human remains from a place of interment, without authority of law." "Interment" is statutorily defined as "the placement of human remains in a cemetery." RCW 68.04.100. Given this definition, Southwick argues that "place of interment" means a cemetery in general. Therefore, to violate the statute, Southwick would have had to remove the cremains from the cemetery. We reject this argument. A "place of interment" is more specific than "interment" and means the particular place remains are buried, such as a plot within a cemetery.

RCW 68.50.140(4) must also be read in conjunction with RCW 68.50.220, which addresses a cemetery's ability to move remains within the boundaries of a cemetery. Under .220, a cemetery under specific circumstances may not need permission to disinter and relocate remains within the cemetery. However, the statute mandates that the cemetery *shall* provide notice to next of kin before moving remains within a cemetery. The notice requirement is mandatory and applies to cemeteries, and Southwick cannot dispute it failed to notify family

members before moving the cremains. Therefore, Southwick was not acting with the authority of law provided by RCW 68.50.220 that would have exempted it from RCW 68.50.140's general prohibition of disinterring remains.

We affirm the Court of Appeals and hold that Southwick was not acting with "authority of law" when it disinterred the cremains without giving prior statutory notification. Because the facts are undisputed, we hold Southwick also violated RCW 68.50.220 by failing to notify next of kin before relocating the cremains within the cemetery. RAP 2.5(a); *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) ("an appellate court can sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof, even if the trial court did not consider it"). These violations also establish unprofessional conduct under RCW 18.235.130(8), supporting the decision by the Board. As referenced, the Court of Appeals vacated one violation and remanded with instructions to reconsider the appropriate sanction. We affirm the Court of Appeals and remand to

the Board for reconsideration of sanctions in light of our holding.[10]

WE CONCUR:

---

## Footnote

[10] Southwick is not entitled to attorney fees under the Washington Equal Access to Justice Act, RCW 4.84.340-.350, because it is not the prevailing party.

No. 95237-0

GORDON McCLOUD, J. (dissenting)—The state Department of Licensing

Business and Professions Division (Department) charged Southwick Inc. with

unprofessional conduct for violating RCW 68.50.140(4). RCW 68.50.140(4) is a

criminal statute originally designed to target grave robbers[1] and it makes removal of

"human remains from a place of interment, without authority of law," a felony.

Whether RCW 68.50.140(4) covers Southwick's conduct presents a

straightforward question of statutory interpretation. The rules of statutory

interpretation compel us to hold that the plain language of this statute—criminalizing

removal of human remains "without authority of law," without defining the meaning

of the phrase "without authority of law"—creates confusion in this case. The

confusion centers on whether Southwick's decision move those cremains to comply

with a lawful demand by the city of Olympia (City) to vacate the City's easement—

an easement necessary to protect public health[2]—should be characterized as moving

---

[1] LAWS OF 1909, ch. 249, § 239.

[2] The relocation would allow the City unimpeded access to water pipes that supplied
water to 90 percent of its residents.

1

cremains "with" or "without authority of law." Since the statutory language and context do not answer that question, we must turn to legislative history and the rule of lenity. Both interpretive aids compel the same conclusion: RCW 68.50.140(4) cannot be used to make a felony out of Southwick's decision to move cremains a few feet to a new urn garden to let the City access its lawful easement.

I therefore disagree with the majority's decision to uphold the finding that Southwick violated this criminal statute. I respectfully dissent.

## STANDARD OF REVIEW

The Department alleged that Southwick committed unprofessional conduct by violating RCW 68.50.140(4). Thus, as the majority acknowledges, the key question in this case is how to interpret that criminal statute. Majority at 1.

This is a question of statutory interpretation that we review de novo. *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015) (citing *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998)). While the majority correctly asserts that we will defer to certain agency decisions in the agency's area of expertise, majority at 7, this is not such an area. The interpretation and application of criminal felony statutes falls within this court's, not the Department's, expertise.

2

ANALYSIS

I.    The rules of statutory interpretation applicable to this case are plain language, context, and other "aids to interpretation," including legislative history and the rule of lenity

We therefore turn directly to our rules of statutory interpretation. We start with the plain language of the statute, examined in the context of the statutory scheme as a whole, because that is the "surest indication" of the legislature's intent. *Five Corners Family Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011). If the language of a statute is plain on its face, then we will give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

But "[i]f, after examining the ordinary meaning of the statute's language and its context in the statutory scheme, more than one reasonable interpretation exists, we treat the statute as ambiguous." *Conover*, 183 Wn.2d at 711-12 (citing *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 282 (2005)). At that point, we turn to other "aids to construction." *Campbell & Gwinn*, 146 Wn.2d at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 844 P.2d 920 (1994)).

Sometimes that "aid" is "legislative history." *Id.* Sometimes that "aid" is the rule of lenity. *Conover*, 183 Wn.2d at 712 (ambiguities in criminal statutes are resolved against the government and in favor of the defendant (citing *Jacobs*, 154 Wn.2d at 601)).

The majority declines to apply the rule of lenity on the ground that neither party raised it. Majority at 4 n.4. This is incorrect. Southwick squarely raised and briefed the issue in its reply in the Court of Appeals. Appellant Southwick's Reply Br. at 21-23.

The majority also declines to apply the rule of lenity because it "would undermine the purpose of the [Washington State Funeral and Cemetery] Board's authority." Majority at 4 n.4. This is also an incorrect reason for declining to apply the rule of lenity. When the rule of lenity applies, it always works against the asserted authority of the government—that is the point. It is a check on government power when the basis for government's assertion of that power is questionable or ambiguous. As the Supreme Court has explained, it is a rule that in a criminal case, fairness requires that "'a fair warning . . . be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *United States v. Bass*, 404 U.S. 336, 348, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816 (1931)). The government cannot criminalize and stigmatize a person's acts

4

unless it does so in clear and unmistakable language and with fair warning. That is not a reason to avoid the rule of lenity: that is the very reason for its existence.

Finally, it may be that the majority wants to avoid this regularly applied rule of statutory interpretation because we are interpreting this criminal statute in the context of a licensing decision rather than in the context of a criminal trial. But we cannot interpret a single criminal statute one way when it is used as a basis for felony conviction and another way when that same criminal statute is used as a basis for professional discipline or some other civil suit. The same statute, with the same words, must mean the same thing no matter where those words are read: in a criminal forum, a quasi-criminal forum, or a civil forum.

For example, the Washington State Bar Association (WSBA) often bases disciplinary charges against attorneys on allegations of criminal conduct. In those cases, the WSBA must prove each element of the crime—there are no shortcuts because the criminal statute is being applied in a civil disciplinary context. *E.g.*, *In re Disciplinary Proceeding Against Placide*, 190 Wn.2d 402, 425-26, 414 P.3d 1124 (2018) (using elements of criminal theft as a basis for attorney discipline); *see also Rozner v. City of Bellevue*, 116 Wn.2d 342, 345-47, 804 P.2d 24 (1991) (holding that in a civil forfeiture action, the State can seize property if it proves probable cause to believe the item was used or intended to be used to violate crimes listed in Title 69 RCW). As the United States Supreme Court explained in *United States v.*

*Thompson/Center Arms Co.*, 504 U.S. 505, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992) (plurality opinion), a civil case in which an arms manufacturer sued for the refund of a tax imposed under the National Firearms Act (NFA), the NFA statute at issue could also form the basis for a criminal conviction. For that reason, it was "proper . . . to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor." *Id.* at 518 (citing *Crandon v. United States*, 494 U.S. 152, 168, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990); *Comm'r v. Acker*, 361 U.S. 87, 91, 80 S. Ct. 144, 4 L. Ed. 2d 127 (1959)); *id.* at 519 (Scalia, J., concurring in judgment) (expressly agreeing with the plurality's application of the rule of lenity).

Indeed, the Supreme Court has repeatedly confirmed that the "rule of lenity can apply when a statute with criminal sanctions is applied in a noncriminal context." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004)). Consistency of law generally requires that the rule of lenity be applied regardless of "whether we encounter its application in a criminal or noncriminal context." *Leocal*, 543 U.S. at 12 n.8.

The rule is simple: a criminal statute, like RCW 68.50.140(4), means the same thing when it is used in a criminal case or a civil case.

II.   Plain language and context do not provide a clear explanation of what "without authority of law" covers

With these rules of statutory interpretation in mind—plain language, context, and, if these rules lead to uncertainty, then other interpretive aids such as legislative history and the rule of lenity—we turn back to the criminal statute at issue here.

In this case, the relevant statutory provision is RCW 68.50.140(4). That subsection, in context of the entire statute, states:

> (1) Every person who shall remove human remains, or any part thereof, from a grave, vault, or other place where the same has been buried or deposited awaiting burial or cremation, without authority of law, with intent to sell the same, or for the purpose of securing a reward for its return, or for dissection, or from malice or wantonness, is guilty of a class C felony.
>
> (2) Every person who shall purchase or receive, except for burial or cremation, human remains or any part thereof, knowing that the same has been removed contrary to the foregoing provisions, is guilty of a class C felony.
>
> (3) Every person who shall open a grave or other place of interment, temporary or otherwise, or a building where human remains are placed, with intent to sell or remove the casket, urn, or of any part thereof, or anything attached thereto, or any vestment, or other article interred, or intended to be interred with the human remains, is guilty of a class C felony.
>
> (4) Every person who removes, disinters, or mutilates human remains from a place of interment, *without authority of law*, is guilty of a class C felony.

7

RCW 68.50.140 (emphasis added). Southwick clearly "remove[d] human remains."

As the majority acknowledges, the only question is whether it did so "without

authority of law."

Neither the plain language of RCW 68.50.140(4) nor the full statute within

which it resides helps us interpret that phrase in this case. "Authority of law" is not

defined in that statute. In fact, it is not defined anywhere in Title 68 RCW, even

though it appears in two provisions of that title: RCW 68.50.140 (making it a felony

to disinter human remains "without authority of law") and 68.24.190 (making it a

misdemeanor to establish a roadway through cemeteries "without authority of law").

The parties, of course, seize on the absence of a clear definition within the

statute or the chapter to argue for their own interpretations. Southwick argues that it

acted with "authority of law" when it moved the urn garden because a different

statute in that title grants it police powers to enforce its own rules and regulations

and "the ordinances of the city and county" (remember, Southwick moved the

cremains to comply with the City's assertion of its property right). That statute,

RCW 68.56.060, gives the cemetery

> the authority of a police officer for the purpose of maintaining order,
> *enforcing the rules and regulations of the cemetery association*, the
> laws of the state, and the ordinances of the city or county, within the
> cemetery over which he or she has charge, and within such radius as
> may be necessary to protect the cemetery property.

8

(Emphasis added.) Southwick argues that its own rules specifically reserve to it "the right to correct errors made by it in making interments, disinterments or removals," so it had "the right to remove and reinter the remains in the property" under this police-powers statute. Appellant Southwick, Inc.'s Pet. for Review at 5-6 (quoting Admin. Record (AR) at 163). Southwick also asserts that it had "authority of law" to move the urn garden because the City demanded access to its easement for critical public health purposes—a demand premised on a lawful property right. Appellant Southwick's Opening Br. at 15 (citing AR at 163).

The majority disagrees. In the absence of a resident definition of "without authority of law," it argues that a different statute requires Southwick to notify the decedent's next of kin when his or her cremains are moved, so that other statute—in a different chapter—negates any "authority of law" Southwick might have had under RCW 68.56.060, even though the former statute makes no reference to the latter statute. Majority at 8, 13-14 (citing RCW 68.50.220).

Neither interpretation of RCW 68.50.140(4) is perfect. Southwick's interpretation does not address the existence of RCW 68.50.220 at all. The majority's interpretation ignores the fact that the Department could have charged Southwick with failing to notify next of kin in violation of RCW 68.50.220—which is not a criminal statute and which cross-references RCW 68.50.200 and 68.50.210, but not RCW 68.50.140(4)—but did not. The Department charged Southwick with

disinterring cremains "without lawful authority" in violation of RCW 68.50.140(4). To reach its result, the majority has to make the interpretive leap that a violation of RCW 68.50.220 (in one chapter of Title 68 RCW) abrogates the "authority of law" that RCW 68.56.060 (in another chapter of Title 68 RCW) gave Southwick to govern and police its cemetery, so that Southwick now acted without such authority in violation of criminal statute RCW 68.50.140(4). To repeat, neither interpretation of the undefined term "without authority of law" is perfect.

We might then turn to our prior case law to help interpret the phrase "without authority of law" to see if that supplies the clarity that Title 68 RCW lacks. *See State v. Smith*, 111 Wn.2d 1, 8-11, 759 P.2d 372 (1988).

It does not. In fact, our prior case law shows that this phrase, "without authority of law," is usually considered ambiguous. In *State v. Richmond*, for example, this court found that the crime of willful failure to pay child support "without lawful excuse" was so vague that it rendered the entire statute "void for vagueness under [the due process protections of] U.S. Const. amend. 14." 102 Wn.2d 242, 248, 683 P.2d 1093 (1984). The due process clause requires criminal statutes to be sufficiently specific so that (1) "persons of common understanding" have notice that the activity is unlawful and (2) criminal convictions are not based on "arbitrary or *ad hoc* determinations of criminality." *Id.* at 243-44. We held that the phrase "without lawful excuse" violated both protections because "potential

10

defendants may violate the statute with the impression that their excuse [(physical, vocational or economic incapacity, or emotional illness)] is lawful, and only later find that it was not." *Id.* at 247. Moreover, the absence of any definition forced "[j]udges . . . to decide what constitutes a lawful excuse on a case-by-case basis according to their personal predilections." *Id.*

Similarly, in *State v. Hilt*, this court voided a statute criminalizing bail jumping "without lawful excuse" on vagueness grounds because the phrase "without lawful excuse" was "nowhere defined and predicting its potential application would be a guess, at best." 99 Wn.2d 452, 455, 662 P.2d 52 (1983).

And in *State v. White*, this court voided a different statute that criminalized the refusal to provide "lawfully required" information to a public servant without "lawful excuse." 97 Wn.2d 92, 100, 640 P.2d 1061 (1982). We held that the phrase "lawfully required" was too subjective to provide fair notice because it left the determination of what information a person must provide to the "unfettered discretion of not only police officers, but virtually any public servant." *Id.* We also held that the phrase "lawful excuse" was ambiguous, because it left a citizen to guess whether his or her claim of privilege against answering would be considered a "lawful excuse." *Id.* (citing U.S. CONST. amend. V).

To be sure, the inherent vagueness of the phrase "lawful authority" might be cured by language elsewhere in the statute or even in the common law. In *State v.*

11

*Smith*, for example, we upheld a criminal harassment statute against a vagueness challenge, despite its use of the phrase "without lawful authority." 111 Wn.2d at 15. We reasoned that where (as in that case) the criminal activity defined by the statute has a long common law history and significant statutory background to inform its meaning, that history and background can cure the inherent indefiniteness in the phrase "without lawful authority." *Id.* at 8-11, 15; *accord State v. Miller*, 103 Wn.2d 792, 794-95, 698 P.2d 554 (1985) (using common law to inform the meaning of assault with intent to resist a "lawful" arrest or detention).

But *Smith* took great care to assure that *Richmond*, *Hilt*, and *White* remain binding precedent where there is an "absence of identifiable sources of law" that might substantiate or define what constitutes "lawful" behavior. *Smith*, 111 Wn.2d at 8; *see also State v. Aver*, 109 Wn.2d 303, 308, 745 P.2d 479 (1987) (acknowledging that *Richmond*, *Hilt*, and *White* are still controlling precedent).

This is just such a case. Here, the crime charged is disinterring cremains by a cemetery operator pursuant to an order from a municipality without informing next of kin. Neither the majority nor the State cites to any long-standing common law history or background suggesting that such actions are unlawful. Thus, the common law fix announced in *Smith* and *Miller* is inapplicable. Instead, the general rule of *Richmond*, *Hilt*, and *White*—that undefined phrases like "lawful authority" or "without lawful authority" are vague and ambiguous—controls.

12

In sum, after looking to RCW 68.50.140's plain language, statutory context, and related cases that might help interpret the critical phrase "without lawful authority," we find no definite answer. The majority's interpretation is certainly plausible despite its complications. But Southwick's interpretation is also plausible. Under *Campbell & Gwinn*, the statute is ambiguous. 146 Wn.2d at 12. That compels us to look to other "aids to construction." *Id.*

### III. Other "aids to construction" bar application of this felony statute to Southwick's conduct

Our case law has been inconsistent on whether the next "aid" we turn to when interpreting a criminal statute is legislative history or the rule of lenity. *See Conover*, 183 Wn.2d at 711-12 (applying the rule of lenity after finding the statute ambiguous (citing *Jacobs*, 154 Wn.2d at 600-01)); *State v. Evans*, 177 Wn.2d 186, 192-93, 298 P.3d 724 (2013) (using legislative history to resolve an ambiguity before applying the rule of lenity).

In this case, though, it does not matter; both point to the same result.

Regarding legislative history, the crime of disinterring the dead now codified at RCW 68.50.140 was originally intended to punish grave robbing. It was titled "Opening Grave—Stealing Body—Receiving Same." LAWS OF 1909, ch. 249, § 239. This history suggests that acquiescing in the City's lawful demand that Southwick

13

vacate the City's easement so the City could assure public health was not the type of grave robbing that the legislature intended to target with this statute.

The rule of lenity compels the same conclusion. It is a rule that ambiguous criminal statutes must be construed strictly against the government. This also weighs in favor of interpreting the statutory phrase "without authority of law" against the government and in favor of Southwick's position that using its delegated police powers to accommodate the City's lawful demand for access to its property was not without authority of law.

## CONCLUSION

After examining the statute's plain language and context, RCW 68.50.140(4)'s phrase "without authority of law" is ambiguous as applied to Southwick's actions. We must resolve that phrase's ambiguity against the government. Southwick's actions cannot, therefore, be deemed to have been taken "without authority of law."

I respectfully dissent.

14

Gordon McCloud, J.

Fairhurst, CJ.

González, J.